## THOMAS BIGGINS

*v.*

## GEORGE L. BROCKMAN *et ux.*

1. LIEN ON REAL ESTATE—*when discharged by mortgagee becoming the purchaser.* When a sheriff, on selling land upon execution, announces that the sale is made subject to a prior lien, and bidders so understand it, the holder of the lien, by purchasing and forfeiting his title in default of redemption, not only extinguishes his lien upon the land, but loses his remedy on the note secured by it.

2. If, under such circumstances, he obtains the property at far less than its real value, unless the amount of his lien be added to the bid, he ought to be equitably estopped from denying that he purchased the property subject to the prior lien, and under the obligation to discharge it as devolved on other bidders.

3. The law will charge the indebtedness upon the land, and it will be presumed to have been discharged as soon as the title becomes vested in the holder of the indebtedness, on the principle that a party may not sue himself at law or in equity.

4. *Equity* may set aside a judgment upon a note which is shown to have been satisfied by such purchase by the holder.

5. PARTIES—*witness.* A *feme covert*, whose separate property is sought to be made subject to the payment of her husband's debt, may resort to a court of equity by joining him in a bill to set aside a fraudulent judgment, and may testify in her own behalf.

APPEAL from the Alton City Court; the Hon. H. S. BAKER, Judge, presiding.

Mr. WM. S. FIELD, for the appellant.

Mr. CHARLES P. WISE, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The object of the bill in this case is to enjoin and set aside as null and void a certain judgment in attachment, obtained

by the appellant against the appellee George L. Brockman, at the September term, 1870, of the Alton city court, on the ground that it was fraudulently obtained.

No personal service was had on the defendant Brockman, and it is claimed that neither of the appellees had any actual notice of the pendency of the suit previous to the rendition of the judgment at that term of the court. It is alleged that the effects in the hands of the persons summoned as garnishees belonged to the appellee Mrs. Olive Brockman and her daughter, Mrs. Dougherty.

Pending the proceedings against the garnishees, and before any final action was had, this suit was instituted and the injunction awarded.

The facts upon which the appellees predicate their right to relief are substantially as follows: On the 14th day of January, 1863, the appellee George L. Brockman was indebted to appellant in the sum of $1600, and, to secure the payment of the note given for the same, the appellees executed a deed of trust, in which Henry Basse was named as trustee for the parties. The note secured by the deed of trust became due in four years after date.

In 1868, at the April term of court, five several judgments were obtained against the appellee George L. Brockman, amounting, in the aggregate, to some $2500. The appellant purchased three of these judgments at a discount, and had the same assigned to him, so that he had the control of them. At the instance of the owners of these several judgments, the sheriff levied the executions issued thereon on the equity of redemption of the appellees in the property described in the deed of trust. The property was regularly advertised and sold by the sheriff, and at the sale the appellant became the purchaser for the sum of $5000. After the payment of the full amount of the several executions, the balance of the purchase money was paid over by the sheriff to Mrs. Brockman. The sheriff's sale was made in October, 1868, and after the note secured by the deed of trust had become due.

The property was not redeemed from the sheriff's sale, and the title ultimately matured in the appellant. In consideration that Mrs. Brockman would release her right of dower and surrender possession of the premises, appellant paid her the further sum of $50. Under this latter agreement, the appellant obtained possession, and has enjoyed the premises ever since.

The principal questions involved in the case are, whether the appellant, in fact or in law, purchased the property subject to his own prior deed of trust, and if so, did it operate to discharge the debt secured by the deed of trust?

It very clearly appears, from the evidence, that the property, at the time the appellant purchased it at the sheriff's sale, was worth much more than the amount of his bid—fully equal to the amount of the bid and the debt secured by the deed of trust. It is difficult to avoid the conviction which the evidence tends to produce, that the appellant expressly agreed to purchase the property subject to the deed of trust. To this effect is the testimony of Challacombe and other witnesses who are wholly disinterested in the result of this litigation.

The conclusion is unavoidable, from the whole evidence, that the appellant knew at the sale that parties who attended understood that the property was being sold subject to his deed of trust, and that by no word or act on his part did he remove that impression. He procured other parties to bid for him, and thus he obtained the property for far less than its real value, unless the amount of the debt secured by the deed of trust be added to the bid. Under such circumstances, the appellant ought to be equitably estopped from denying that he purchased the property subject to the debt secured thereon. The purchase by the appellant of the property under this state of facts, in equity would operate as a payment or extinguishment of the debt secured by the deed of trust.

In *Weiner* v. *Heintz et al.* 17 Ill. 259, it was held that "where two titles or interests in land become united in the same person, in the same right, and at the same time, as that of

mortgagor and mortgagee, the lesser will merge in the greater estate and become extinct, unless there be some interest or intention to the contrary, or the merger would work an injury to some one."

In this instance the *cestui que trust* purchased the equity of redemption of the appellees, the legal title being held by Basse for him—the whole title to the land becoming, by reason of the purchase, vested in him. Under such circumstances, as a question of law, the purchaser is presumed to have bought the land at its value, less the amount of indebtedness secured thereon, and equity will not permit him to hold the land and still collect the debt from the mortgagor. The law will charge the indebtedness upon the land, and it will be presumed to have been discharged so soon as the title becomes vested in the holder of the indebtedness, on the principle that a party may not sue himself at law or in equity.

The views here expressed are fully sustained by the case of *Booker* v. *Anderson et ux.* 35 Ill. 66. In that case a trustee sold lands under a power conferred upon him by a deed of trust, giving notice at the sale of a prior mortgage. The *cestui que trust* became the purchaser, and afterwards paid the debt secured by the prior mortgage. It was held that, in discharging the prior incumbrance, the purchaser under the junior incumbrance only acted in conformity with the terms of the sale, and was thereby only paying a part of the purchase money.

We regard the principles of this case as conclusive of the one at bar. If the testimony is to be credited, the sheriff gave notice that the property would be sold subject to the debt of the appellant. The parties present so understood the terms of the sale, and this fact was also known to the appellant himself. If the appellant did not intend to buy subject to his own incumbrance, he ought to have given notice that the purchaser would take the premises discharged from the lien created by the deed of trust, and that he would look to the maker of the note for his security, and not to the land.

This he did not do. The law will presume that he got the property at less than its value, by the amount of the incumbrance; hence, the holder of the indebtedness being the purchaser, the debt must be regarded as being extinguished by the act of purchase.

The judgment in attachment must, therefore, be held to be fraudulent as to appellees. The appellant, knowing that the indebtedness of Brockman to himself was extinguished by his act of purchase, could not lawfully institute attachment proceedings, and where the judgment is fraudulently obtained, a court of equity has the undoubted authority to declare such a judgment null and void. *Webster* v. *Reid*, 11 Howe, 437; *Wing* v. *Wing*, 9 Mod. 109; *Dobson* v. *Pierce*, 12 N. Y. 165.

The appellant having undertaken to subject funds claimed to belong to the appellee Mrs. Brockman to the payment of the judgment in attachment, she had the undoubted right to institute proceedings to protect such funds. For this purpose, she could resort to that forum which would afford the speediest and most effective remedy, and, for this reason, we are of opinion that she was properly made a co-complainant in the bill. If Mrs. Brockman, therefore, was a proper party to the bill, then the objections taken to the competency of her testimony are untenable. Estate claimed to be her separate property was involved in the litigation, and, under the statute, it was competent for her to testify for its protection.

No error appearing in the record, the decree is affirmed.

*Decree affirmed.*