# THOR J. SLETTEN v. THE FIRST NATIONAL BANK OF CARRINGTON, North Dakota.

### (163 N. W. 534.)

**Mortgagee — holding second and third mortgages — forecloses third — bids in property — for amount of the debt secured thereby — additional security — payments — redemption — time of — information as to — failure to give — bad faith.**

1. Where a mortgagee holding both a second a third mortgage forecloses the third mortgage, bidding in the property for the amount of the third mortgage debt, interest, and costs, and after the sale takes additional security for the second mortgage debt which it afterwards collects in full and credits to the mortgagor on the debt secured by the second mortgage, and where the purchaser refrains from giving the mortgagor definite information in regard to the date of the expiration of the period of redemption, *held* that the circumstances indicate bad faith on the part of the mortgagee.

**Evidence — findings of trial court — mortgagee — foreclosing mortgage — bad faith — intention of.**

2. Evidence examined and *held* to substantiate the finding of the trial court that the mortgagee, in perfecting a foreclosure of the third mortgage, acted in bad faith and manifested an intention to secure the land of the mortgagor for the amount of the mortgage, rather than to collect the debt secured thereby.

**Mortgagee — bidding at sale — stands on same terms as others — prior mortgage held by — bids made subject to.**

3. Where a mortgagee bids at foreclosure sale, it must be held to bid on the same terms as others, and consequently to bid subject to a prior mortgage held by it.

**Junior mortgage foreclosure — senior mortgage outstanding — to same mortgagee — land becomes primary fund — for payment of senior mortgage — mortgagee becoming purchaser at sale — his senior mortgage discharged.**

4. As a consequence of the foreclosure of a junior mortgage where a senior mortgage is outstanding, the land purchased at the foreclosure sale becomes the primary fund for the payment of the senior mortgage; and where a senior mortgage is held by a junior mortgagee who bids in the land at foreclosure sale under the latter mortgage, such senior mortgage is discharged.

**Mortgage foreclosure — mortgagee — property bid in by other indebtedness held by — collateral security — proceeds of — application of — reciprocal equities.**

5. Where a mortgagee bids in the property of the mortgagor at foreclosure sale, and later realizes upon collateral held by it as security for other indebtedness of the mortgagor secured by a prior lien, and applies the proceeds to the payment of the mortgagor's debt, the mortgagee cannot complain when the mortgagor accepts the reciprocal equitable alternative and treats the land as being held by the mortgagee merely as security for the indebtedness.

**Mortgagee — continues to treat land as security — redemption — mortgagor entitled to right of — payment.**

6. Where the mortgagee continues to treat the land purchased by it at foreclosure sale as security for indebtedness of the mortgagor, the mortgagor is entitled to redeem upon the payment of the indebtedness.

Opinion filed May 12, 1917.

Appeal from the District Court, Stutsman County, *Coffey, J.*
Defendant appeals.
Affirmed.

Statement of facts by BIRDZELL, J.

This is an appeal from a judgment of the district court of Stutsman county permitting the plaintiff and respondent, Sletten, to redeem from a mortgage foreclosure sale in circumstances that appear in the statement of facts below. The case is here for trial *de novo*, and error is predicated upon certain findings of fact and conclusions of law which will be specifically treated in the opinion. The facts as we gather them from the record are as follows: In March, 1911, Thor J. Sletten was the owner of real estate in Stutsman county, described as follows: The west half of the east half of section 4, township 143, range 68, which land, with the improvements, was, conservatively estimated, worth $4,000,—the trial court finding its value to be $4,800. In order to obtain funds with which to purchase a threshing outfit, the plaintiff, on the above date, gave three notes equal in amount, aggregating $1,500, to the First National Bank of Carrington, to secure which he gave a real estate mortgage upon the above-described land. As additional security Sletten gave a chattel mortgage upon the threshing outfit bought by him. In the fall of 1912, being unable to make any payments on this obligation, Sletten authorized the First National Bank to foreclose the chattel mortgage by a sale of the mortgaged property, but it nowhere appears that any sale was made under this authorization. In the month of November, 1912, one A. T. Johnson, in company with G. S. Newberry, cashier of the First National Bank of Carrington, called at the home of Sletten and obtained from him a demand note for $220, the same representing an indebtedness of Sletten to Johnson. To secure this note Sletten gave a real estate mortgage covering the land above referred to. A little more than two weeks after this note was executed, Sletten paid Johnson the sum of $120 to apply thereon, which payment was indorsed on the note. On January 3, 1913, Johnson assigned this note and mortgage to the First National Bank, executing the assignment in blank, however. On February 5, 1913, Newberry advised Sletten that the bank had purchased the Johnson note, and notified him that unless the balance was paid foreclosure would be started. Following this notice foreclosure proceedings were started, and on the 19th day of April, 1913, the land was sold to the mortgagee at foreclosure sale for $300.04. (The notice of foreclosure sale stated that the bank had been required to pay $141.82

as interest upon the first mortgage and as real estate taxes, which amount was declared to be part of the mortgage debt.) From this foreclosure sale no redemption was made within the time prescribed by law, and after the expiration of the time for redemption the sheriff of Stutsman county duly issued a sheriff's deed to the First National Bank of Carrington. In addition to the mortgages that figure in the above transactions between Sletten and the First National Bank, Sletten had in 1910 given to the Wells-Dickey Company a first mortgage upon the land for $850, due in 1915. It appears that soon after Sletten received notice from the bank that it had purchased the Johnson note and mortgage and requesting that the same be immediately paid, he went to Carrington for the purpose of seeing Newberry and adjusting the indebtedness to his satisfaction, but Newberry, being absent at the time, nothing came of this attempt. On about May 6, 1913, plaintiff Sletten went again to Carrington, where he saw Newberry, and where he and Newberry, together with two other men named Anderson, consummated a sale of Sletten's threshing machine, upon which the bank held the chattel mortgage. The arrangement made in connection with the sale of the machine was this: The Andersons gave Sletten their notes for $1,500, secured by a chattel mortgage on the threshing outfit and other personal property, and these notes and mortgage were left by Sletten as collateral to his obligations to the bank. About this time Sletten gave another real estate mortgage on the above-described land to J. Buchanan & Sons, to secure an indebtedness of $320.25 owing to them, which indebtedness had formerly been secured by a second mortgage on the threshing machine. Soon after the above transactions were had, the plaintiff who had been unfortunate in his farming operations for two or three years, left the state and went to Canada, where he remained until the latter part of December, 1913. During his absence in the fall of 1913 the Andersons paid $500 to the bank on their threshing-machine notes, and in March, 1914, they paid the balance in full to the James River National Bank of Jamestown, to which bank the notes were later assigned by Sletten at the solicitation of Newberry.

On the occasion of Sletten's visit to Carrington in December 1913, he was there but a short time, but he took the trouble to make an appointment with Newberry to discuss with him the business relations between himself and the bank. The evidence as to this conversation

is very conflicting, Sletten testifying to the effect that Newberry avoided giving a direct answer to the question as to whether the mortgage upon the land was foreclosed, and also avoided giving a statement, in response to his demand for one, which would show how much he was indebted to the bank. Newberry, on the other hand, testified that Sletten knew and understood that the Johnson mortgage had been foreclosed, and that Sletten's indebtedness, including that represented by the Johnson mortgage, was talked over pro and con. Sletten left Carrington on the 24th of December, and the remainder of the transactions pertaining to the foreclosure are evidenced by correspondence. Sletten spent the remainder of the winter in Willmar, Minnesota, and while there attempted to negotiate a sale of his equity in the land involved herein. Early in March, 1914, he addressed a letter of inquiry to the First National Bank of Carrington to determine the amount of the bank's claim against him. This inquiry was answered by Newberry; but in his answer, while specific reference is made to the foreclosure proceedings under the Johnson mortgage, neither the date of the foreclosure sale nor the date of the expiration of the period for redemption are mentioned. Again, under date of April 10, 1914, Newberry replied to a letter written by Sletten, in which he again refers to the foreclosure proceedings, and in this letter nothing is said with regard to the expiration of the period of redemption. The reference to the foreclosure is as follows: "As regards the foreclosure against your land, you know without being told that that was begun some time ago. . . ." Acting in response to advice contained in the above letter, Sletten assigned the Anderson notes to the James River National Bank, which assignment was dated April 14th. Upon receipt of this assignment, and under date of April 15th, Newberry replied to Sletten's letter, and in this reply he again referred to the foreclosure under the Johnson mortgage as follows: "You seem to feel that it is our desire to steal this land from you . . ." "The foreclosure, as you know, is in connection with your note to A. T. Johnson, which is payable on demand, which note was sold to the bank, and on which payment was demanded, and, by reason of that demand not being met, foreclosure was begun."

It appears that during the winter and spring of 1914, while Sletten was negotiating with one Gratz for the sale of the land, the latter made a trip to Carrington for the purpose of looking at the property. Sletten

testified that on Gratz's return the deal was called off, and that Gratz advised him to go to Carrington as quickly as he could.

*Edward P. Kelly,* for appellant.

The mere inadequacy of price at a foreclosure sale is no ground to set aside the foreclosure in the absence of fraud, undue advantage, or prejudice. Grove v. Great Northern Loan Co. 17 N. D. 352, 138 Am. St. Rep. 707, 116 N. W. 345; Bailey v. Hendrickson, 25 N. D. 500, 143 N. W. 134, Ann. Cas. 1915C, 739.

An assignment of a mortgage executed in blank, but with the name of the assignee written in thereafter, by express authority, is a valid assignment. Lamar v. Simpson, 1 Rich. Eq. 71, 42 Am. Dec. 345; Field v. Stagg, 52 Mo. 534, 14 Am. Rep. 435; Owen v. Perry, 25 Iowa, 412, 96 Am. Dec. 49; Swartz v. Ballou, 47 Iowa, 188, 29 Am. Rep. 470; Stahl v. Berger, 10 Serg. & R. 170, 13 Am. Dec. 666; McClain v. McClain, 52 Iowa, 272, 3 N. W. 60; Logan v. Miller, 106 Iowa, 511, 76 N. W. 1005.

An officer taking the acknowledgment of an instrument must indorse or attach thereto the certificate required by law. Comp. Laws 1913, § 5574; Cannon v. Deming, 3 S. D. 421, 53 N. W. 863.

To entitle a party to make foreclosure, it shall be requisite that the mortgage containing such power of sale has been duly recorded, and, if it shall have been assigned, that all the assignments thereof have been duly recorded. Comp. Laws 1913, § 8077; Hebden v. Bina, 17 N. D. 235, 138 Am. St. Rep. 700, 116 N. W. 85; Morris v. McKnight, 1 N. D. 266, 47 N. W. 375; Benson v. Markee, 41 Minn. 112, 42 N. W. 787.

Where the amount claimed as due and as published in the notice, and such amount is in excess of the actual amount due, such fact will not invalidate the sale, where it clearly appears that the mistake was an innocent one, and made without actual knowledge of the true condition and with no bad motive toward the mortgagee, and where the mortgagor sustained no loss. Grove v. Great Northern Loan Co. 17 N. D. 352, 138 Am. St. Rep. 707, 116 N. W. 345; Butterfield v. Farnham, 19 Minn. 85, Gil. 58; Hamilton v. Lubukee, 51 Ill. 415, 99 Am. Dec. 562; Klock v. Cronkhite, 1 Hill, 107; White v. McClellan, 62 Md. 347; Ramsey v. Merriam, 6 Minn. 168, Gil. 104; Cook v. Foster, 96 Mich. 610, 55 N. W. 1019; Comp. Laws 1913, §§ 2211, 6718.

Where the notice of sale states the amount by giving the separate

items thereof, the mortgagor could not possibly have been deceived or mislead. Such a notice also dispels any thought of fraud or unfairness. Comp. Laws 1913, §§ 8088–8090; Trenery v. American Mortg. Co. 11 S. D. 506, 78 N. W. 991; Grove v. Great Northern Loan Co. 17 N. D. 352, 138 Am. St. Rep. 707, 116 N. W. 345; Bailey v. Hendrickson, 25 N. D. 500, 143 N. W. 134, Ann. Cas. 1915C, 739.

Fraud, and the intent to injure, deceive, and mislead, must be clearly shown before a mortgage foreclosure sale will be set aside. Grove v. Great Northern Loan Co. 17 N. D. 352, 138 Am. St. Rep. 707, 116 N. W. 345; Bailey v. Hendrickson, 25 N. D. 500, 143 N. W. 134, Ann. Cas. 1915C, 739; Hedlin v. Lee, 21 N. D. 495, 131 N. W. 390.

*S. E. Ellsworth,* for respondent.

Inadequacy of price paid at a foreclosure sale, while not sufficient alone to warrant the setting aside of the sale, yet it may be considered, with other things, as ground for setting sale aside. And where the price is clearly inadequate, the purchaser can only retain his advantage by showing the proceedings are free from fault or irregularity. Dewey v. Linscott, 20 Kan. 684; Pickett v. Pickett, 31 Kan. 727, 3 Pac. 549; Capital Bank v. Huntoon, 35 Kan. 577, 11 Pac. 369; Freeman, Executions, §§ 304, 308, 309; Jones v. Carr, 41 Kan. 329, 21 Pac. 258; Means v. Rosevear, 42 Kan. 377, 22 Pac. 319; Schroeder v. Young, 161 U. S. 334, 40 L. ed. 721, 16 Sup. Ct. Rep. 512.

Great inadequacy requires only slight circumstances of unfairness in the conduct of the party benefited by the sale, to raise the presumption of fraud. Graffam v. Burgess, 117 U. S. 180, 29 L. ed. 839, 6 Sup. Ct. Rep. 686; O'Donnell v. Lindsey, 7 Jones & S. 523; King v. Platt, 37 N. Y. 155; Griffith v. Hadley, 10 Bosw. 588; Re Dwight, 15 Abb. Pr. 259; King v. Morris, 2 Abb. Pr. 296; Francis v. Church, Clarke, Ch. 475; Wiltsie, Mortg. Foreclosure, § 539, and cases cited; Kloepping v. Stellmacher, 21 N. J. Eq. 328; Hedlin v. Lee, 21 N. D. 495, 131 N. W. 390.

To enable a party claiming as assignee of the mortgagor to foreclose a mortgage upon real estate in this state by advertisement, the record must satisfactorily show the legal title to the mortgage to be in the assignee. Comp. Laws 1913, § 8077; Morris v. McKnight, 1 N. D. 266, 47 N. W. 375; Hebden v. Bina, 17 N. D. 235, 138 Am. St. Rep. 700, 116 N. W. 85.

If the acknowledgment of the assignment is defective and the assignment not entitled to record, the foreclosure sale is void even though the assignment was actually transcribed upon the records. Erickson v. Conniff, 19 S. D. 41, 101 N. W. 1104; Langmaack v. Keith, 19 S. D. 351, 103 N. W. 210; Smith v. Clark, 100 Iowa, 605, 69 N. W. 1011; Emeric v. Alvarado, 90 Cal. 444, 27 Pac. 356.

And a void instrument is not rendered effective by acknowledgment. 1 Cyc. 541; Helton v. Asher, 103 Ky. 730, 82 Am. St. Rep. 601, 46 S. W. 22.

A sale of property under mortgage foreclosure, for an amount greatly in excess of the sum of the indebtedness actually secured by the mortgage, is in itself evidence of fraud; and such sale will be set aside. 27 Cyc. 1713; Lockwood v. Mitchell, 19 Ohio, 448, 53 Am. Dec. 438; Upchurch v. Anderson, — Tenn. —, 52 S. W. 917.

The selection of a newspaper of limited circulation, when there are other and much more suitable papers at hand, is also a circumstance which may be considered. Hedlin v. Lee, 21 N. D. 495, 131 N. W. 390.

The dealings and letters passing between the parties, prior to the foreclosure, may also be considered when they show a spirit of unfairness on the part of the mortgage or assignee. Graffam v. Burgess, 117 U. S. 180, 29 L. ed. 839, 6 Sup. Ct. Rep. 686.

The junior mortgagee or lien creditor will be protected by the courts to the same extent as the mortgagor. Hayes v. Pace, 162 N. C. 288, 78 S. E. 290; Finlayson v. Peterson, 11 N. D. 45, 89 N. W. 855; Cooley, Taxn. pp. 503, 504, and note 1; 15 Am. & Eng. Enc. Law, p. 820, and note 3; Ward v. Matthews, 80 Cal. 343, 22 Pac. 187; Christy v. Fisher, 58 Cal. 256; Burchard v. Roberts, 70 Wis. 111, 5 Am. St. Rep. 148, 35 N. W. 286.

The equities arising out of the application of money belonging to a mortgagor from any source, coming into the hands of a mortgagee after foreclosure, are rigidly administered in favor of a mortgagor, and courts compel a strict account of the same. Folsom v. Norton, 19 N. D. 722, 125 N. W. 310.

BIRDZELL, J. (after stating the facts as above). The record in this case is a long one; and, while there is considerable conflicting testimony, there can be little doubt that the facts in the foregoing state-

ment are amply substantiated by the evidence. The real controversy is as to the proper inferences of fact and the legal conclusions warranted by the facts stated. The trial court found that the acts of Newberry, as cashier of the First National Bank of Carrington, sufficiently manifested an intention on the part of the defendant to obtain the plaintiff's land for the amount due upon the Johnson mortgage, rather than to collect the indebtedness secured by the mortgage, and it was also found that the foreclosure under the circumstances was an act of bad faith on the part of the defendant. If these inferences of fact are warranted by the record, there can be no question but that the judgment of the trial court is correct. We confess it has been a matter of no little difficulty to satisfy our minds that the foregoing inferences were fully warranted by the facts adduced at the trial, but we have come somewhat reluctantly to the conclusion that the findings of the trial court are justified. We say we have come reluctantly to the conclusion, because of our appreciation of the importance of sustaining the validity and legal effect of statutory proceedings brought to foreclose mortgages where, as here, there apparently has been a full compliance with the statute, and because of the natural disinclination to ascribe unworthy motives to our fellow men in the transaction of the ordinary affairs of life. There are no circumstances tending strongly to indicate such an abuse of the statutory proceedings as was involved in the case of Hedlin v. Lee, 21 N. D. 495, 131 N. W. 390. But here the relief the plaintiff asks is based upon the attitude of the defendant in its relations to him at the time of the foreclosure and subsequently during the period of redemption. Before the foreclosure, it would seem that the defendant bank had ample security for the $100 remaining due on the Johnson note, but it nevertheless had the right to foreclose the mortgage securing the same. After this foreclosure, however, the security held for all that was owing to it by Sletten was enhanced by the sale of the threshing machine to the Andersons, resulting in the pledge of the Anderson notes and a chattel mortgage covering additional property. During the redemption period the bank realized upon collateral held by it, whereby the amount of Sletten's obligation was decreased by more than $1,500. Assuming that Sletten's $1,500 mortgage was still equitably owing to the bank, the effect of this was to discharge it *pro tanto,* if not entirely, and it would likewise reduce the amount of money the

bank would have in the land if ultimately it should obtain the sheriff's deed.   It is true that the bank held other securities for this $1,500 obligation of Sletten; but it would seem that this fact, as well as the facts mentioned above, would only heighten the obligations of the bank to proceed with the utmost good faith and fairness in its dealings with him.   When Sletten's obligations to the bank are compared with the security given and realized upon, and when consideration is given to the rather indefinite and somewhat evasive answers of Newberry in response to requests for information, continuing almost to the very date of the expiration of the period of redemption, it can hardly be said that the bank acted with that degree of good faith that would be manifested by one whose sole interest was to collect a debt justly owing, with interest and costs.

But however this may be, we are of the opinion that the judgment of the trial court is right for reasons other than those assigned.   When the First National Bank foreclosed the Johnson mortgage, it offered for sale the equity of Sletten.   At the time of the sale anyone who desired to bid and who first consulted the records to ascertain the extent of Sletten's equity in the land would have learned that it was subject to a first mortgage of $850 to the Wells-Dickey Company, a second mortgage to the First National Bank of Carrington for $1,500, and to a third mortgage, or the one being foreclosed, upon which there was due, according to the notice of foreclosure, the sum of $300.04.   Therefore, when the First National Bank bid at the sale, it must be deemed to have offered the amount bid in competition with all the world, the competitors regarding the land as subject to about $2,400 of prior claims.   The bid of the First National Bank must, then, be considered to have been for an amount above those prior liens to the extent of the bid.   By operation of law, the land became *ipso facto* the primary fund for the payment of such prior liens, and, so far as the relations between Sletten and the bank were concerned, the second mortgage was just as effectually discharged in equity as was the third mortgage.   Had the equity been sold to a stranger, instead of to the mortgagee, and had Sletten been compelled later to pay the second mortgage debt, there can be no doubt that he would have had recourse against the property.   A mortgagee purchaser stands in no different relation to the debtor in this respect. Murphy v. Elliott, 6 Blackf. 482; Biggins v. Brockman, 63 Ill. 316;

Robins v. Swain, 68 Ill. 197; American Bldg. & L. Asso. v. Waleen,. 52 Minn. 23, 53 N. W. 867; American Bldg. & L. Asso. v. Stoneman, 53 Minn. 212, 54 N. W. 1115; Donohue v. Chase, 130 Mass. 137; Pioneer Sav. & L. Co. v. Freeburg, 59 Minn. 230, 61 N. W. 25; Speer v. Whitfield, 10 N. J. Eq. 107; Lydecker v. Bogert, 38 N. J. Eq. 136. The purchaser at the mortgage foreclosure sale is in the same position as one who takes by voluntary conveyance subject to the prior encumbrances. A grantee in these circumstances is not entitled to the benefits of collateral security which the vendor had placed with the mortgagee subsequent to the execution of the mortgage. Brewer v. Staples, 3 Sandf. Ch. 579; American Bldg. & L. Asso. v. Waleen, 52 Minn. 23, 53 N. W. 867. Nor in such a case is the purchaser at the foreclosure sale, who is also the owner of prior mortgages, entitled to enforce against the debtor the collection of the notes secured thereby. Weiner v. Heintz, 17 Ill. 259; Mines v. Moore, 41 Ill. 273; Belleville Sav. Bank v. Reis, 136 Ill. 242, 26 N. E. 646; Lilly v. Palmer, 51 Ill. 331. Whenever the lienholder's interest becomes merged with the estate of the mortgagor, the primary consequence is to extinguish the mortgagor's equity of redemption, not only from the mortgage foreclosed, but from the senior mortgages as well, and as a reciprocal consequence the prior mortgage debts owing by the mortgagor to the mortgagee, who purchased at the sale, is extinguished. 27 Cyc. 1383. But if the land is sold to a stranger, it becomes, according to the foregoing authorities, the primary fund for paying the senior mortgage obligations, subject to which it was sold. While the merger would not be completed until the expiration of the period for redemption, and technically, perhaps, not until the execution of the sheriff's deed (but see Belleville Sav. Bank v. Reis, 136 Ill. 242, 26 N. E. 646), the relations of the parties while the mortgagee holds the sheriff's certificate of sale should be regarded in the light of the equitable consequences of the sale. The mortgagee, having by its bid manifested a willingness to pay $300.04 for the mortgagor's equity in the land, must be held to have been willing to assume the legitimate consequences of its purchase, one of the most important of which is that it would take the title and wipe out Sletten's prior obligations to it. Having, upon the sale and as the holder of the sheriff's certificate, assumed such an attitude, and having later counseled, advised, and even solicited Sletten to assign the

Anderson notes so that they might be paid and the proceeds applied on his prior obligations to it, thus treating such obligations as still owing, it cannot now complain if the mortgagor makes a claim wholly consistent with such attitude. Insistence upon its right to collect the $1,500 debt secured by the prior mortgage, and its later collection, retention, and credit is only consistent in equity with the surrender of the rights under the sheriff's certificate upon the equitable terms proposed by the debtor. The plaintiff has at no time manifested a willingness to pay over to Sletten the amount collected on the Anderson notes, and it cannot now complain if Sletten adopts the equitable alternative and treats the land as having been held by the plaintiff only as security for the debt upon which the foreclosure was had.

The judgment of the trial court is affirmed.

ROBINSON, J. (concurring specially). This is a suit for redemption from a foreclosure sale after the making of a sheriff's deed to the purchaser. Under a mortgage made by the plaintiff on April 19, 1913, the bank foreclosed on a quarter section of land and bid in the same for principal and interest and costs, amounting to $300.04. The trial court, by Honorable J. A. Coffey, gave judgment for the plaintiff, and the bank appeals to this court.

As the trial court found and as the evidence shows, the plaintiff's equity in the land amounts to $3,600, and so it seems the bank insists on receiving from the plaintiff twelve times the total amount of its little mortgage, with interest and costs. That seems like trying to kill the goose that laid the golden egg. Under the statute a mortgagee or his assigns may fairly and in good faith become a purchaser of the property sold. Good faith consists in an honest intention to abstain from taking an unconscientious advantage of another even through the forms and technicalities of law. The law and the courts are not made to rob men of their property. The case is much the same as if a party should pledge or pawn a watch worth $120 as security for $10, payable in a month, and after the lapse of the month, when the owner comes to redeem his watch, the pawnee says to him: "You are too late. I have sold the watch to myself for $10." Of course that is not good faith. It is trying to take an unconscionable advantage of another through the

forms and technicalities of the law. And strange as it may seem, there are some court decisions that do in such cases hold in favor of giving the pound of flesh, but we prefer to base the decision of this court on a broader and better equity. As said by the trial court, the foreclosure was unnecessary; it was conducted in bad faith and for the purpose of obtaining title to the plaintiff's land, and the debt might well have been collected by fair and courteous notices and correspondence, without piling up costs of foreclosure.