[File No. 5937.]

LULA COLE INGSTAD, Appellant, v. THE FARMERS STATE BANK OF MANDAN, NORTH DAKOTA, a Corporation, Respondent.

(237 N. W. 704.)

Opinion filed July 14, 1931.

*Freerks & Freerks,* for appellant.
*Kelsch & Higgins,* for respondent.

BIRDZELL, J. The plaintiff brought action against the defendant to recover an amount alleged to have been realized by the defendant in the course of dealing with certain property upon which the plaintiff held mortgages which were in turn pledged with the defendant as collateral security for an obligation owing by the plaintiff. The relief demanded is a money judgment for an excess alleged to have been received by the defendant over and above the obligation owing by the plaintiff in circumstances pleaded. The action was tried to the court without a jury as a suit in equity and, without regard to the real character of the action, it will be treated as one founded upon the alleged fiduciary relation between the plaintiff as pledgor and the defendant as pledgee of the collateral involved and for an accounting therefor. In the district court the defendant had judgment of dismissal and for costs and the plaintiff appeals, demanding a trial de novo and also assigning certain errors in the trial and disposition in the lower court. The facts, though somewhat complex, are not in dispute. Those that are essential to an understanding of the controversy and the questions presented on appeal may be stated as follows:

In May, 1925, the plaintiff, then Lula Cole, owned a meat market

in the city of Mandan, also certain real property upon which was located a slaughter house. She sold the market and the real property to one Rassilyer for a consideration of $4,000. She received $2,000 in cash and took from Rassilyer two notes of $1,000 each, secured by chattel and real estate mortgages on the property sold. At that time the plaintiff was indebted to the defendant bank on a note due October 19, 1925, in the amount, with interest, of $1,391.50. To secure this note the plaintiff pledged to the defendant the two Rassilyer notes and assigned the mortgages, which notes and mortgages the bank subsequently held as collateral security for the indebtedness. The plaintiff from time to time renewed her note at the bank. In September, 1926, after the maturity of the Rassilyer notes, Rassilyer absconded. At the time of his disappearance he was indebted to the defendant bank upon past due notes in an amount aggregating $1,514. In September, 1926, the bank brought action against Rassilyer and levied attachments upon the identical personal and real property covered by the mortgages which it held as collateral to the plaintiff's indebtedness. In this action it recovered a judgment against Rassilyer for $1,634.05, which judgment directed the sale of the attached property. The personal property was sold on execution on December 15, 1926, subject to the chattel mortgage lien. It was bid in by the defendant for the sum of $200. The sheriff duly made a report of the sale and it was confirmed by order of court. In March, 1927, the real property was likewise sold on execution, subject of course to mortgages, the defendant bidding it in for the sum of $100, which sale was likewise confirmed. The defendant at the time of the trial of the instant action was still the owner and holder of the sheriff's certificate. After the defendant had obtained its judgment in the attachment suit and before the sale, it procured, on or about the 6th day of December, 1926, a renewal of the plaintiff's note which was then past due. The renewal note was for $1,496.15, including interest to December 6, 1927, and fell due on the latter date. When this note fell due the defendant notified the plaintiff, demanding payment and stating that in the event it was not paid the defendant would foreclose the chattel and real estate mortgages pledged to secure it. Thereafter in July, 1928, the defendant proceeded to foreclose the chattel mortgage, notifying the plaintiff by registered mail and enclosing notice of the sale. At the sale the property was bid in

by a third person in bulk for $600 and, deducting the expense of the sale, $486.14 was credited on plaintiff's note.

In May, 1929, the defendant commenced proceedings to foreclose the real estate mortgage, still held as collateral, notifying the plaintiff by registered mail, and in the notice informed the plaintiff that the defendant would not bid at such sale more than the amount which she (the plaintiff) was still owing the defendant on her note, to-wit $1,090.41, with interest. Upon the sale the property was bid in by the same person who had purchased the personalty, J. A. Timmerman, for $1,238, the plaintiff not appearing or bidding and the defendant applying the proceeds to the payment in full of the plaintiff's note and thereafter returning the same to her.

The principal contention of the plaintiff and appellant is that in attaching and selling the property covered by the plaintiff's mortgages, which had been pledged by her to the defendant as collateral to her indebtedness, the defendant was guilty of a breach of faith with respect to obligations arising out of the relation of pledgor and pledgee. More specifically, as we understand the appellant's argument, it is contended that any attempt by a pledgee to acquire an interest in the mortgaged property in realizing upon a personal indebtedness of the mortgagor to it is so far inconsistent with its obligation to the pledgor that it should be held accountable to her to the full extent of her special property and that particularly is this true in this case by reason of the fact that the defendant had bid upon property at the execution sales subject to the mortgages; or, in other words, had manifested a willingness to pay the price bid over and above the mortgages. It is said, in substance, that after so bidding the bank, had it been the owner of the first mortgage notes given by Rassilyer, could not have enforced payment as against him; that as it was the bank's duty to collect the collateral it should not be heard to say that it did not receive the full amount of the mortgages subject to which the sale to it was made; that as between the bank and Rassilyer there was in legal effect a merger of the mortgage note obligations in the title to his equity which the bank acquired upon the execution sales; that since the plaintiff is the owner of the obligations which as to the defendant are thus in legal effect merged and is also the beneficiary of the trust relation arising out of the pledge, she may properly call upon the bank (the

defendant) to pay over to her the difference between the amount due on her note and the amount due on the mortgages pledged.

The argument is both ingenious and ingenuous, but we think when subjected to analysis it will be found to be without substantial basis, either in law or equity. Rassilyer was indebted to both the plaintiff and the defendant. The indebtedness to the plaintiff was secured by first mortgages on the market and the real estate. The indebtedness to the defendant was apparently unsecured. Rassilyer's equity in the property above the plaintiff's mortgages was by express provision of the statute (Comp. Laws, 1913, § 7548) subject to attachment and sale on execution. Second Nat. Bank v. First Nat. Bank, 8 N. D. 50, 76 N. W. 504. The defendant would violate no obligation owing to the plaintiff in attempting to realize upon that equity to satisfy Rassilyer's obligation to it. It had an equal right with any other creditor of Rassilyer to subject that equity to the payment of his obligation. But on account of the collateral pledged with it by the plaintiff it was bound to take no steps which would interfere with the plaintiff's realizing upon that collateral. It did not interfere with the mortgages or damage the underlying security, the property. In the attachment suit it respected its obligation as pledgee of the plaintiff's liens by levying upon the selling only the interest or equity of Rassilyer above the pledged mortgages. The plaintiff's property or interest was in no way jeopardized in the attachment proceedings, and whether the bid of the defendant was provident or improvident does not concern her, because the property remains as to such bidder subject to the plaintiff's first mortgages. The effect of the execution sales was merely to extinguish Rassilyer's rights as a redemptioner. It may be true that if the defendant bank had owned the Rassilyer notes and the first mortgages which were security therefor, it could not, after acquiring title through the execution sales in the manner it did, enforce the notes as against Rassilyer (Sletten v. First Nat. Bank, 37 N. D. 47, 163 N. W. 534), but it is difficult to see how this hypothetical situation is helpful to the plaintiff who was at all times the owner of the notes and mortgages.

The fallacy of the appellant's contentions in this connection becomes apparent when examined in light of the legal effect of the defendant's purchases at the execution sales. The mortgages did not become merged with the estates purchased, for it is elementary that before a merger *in*

*law* will take place the greater and the lesser estates must "meet in one and the same person, *in one and the same right,* without any intermediate estate." (Italics supplied.) 2 Jones Mortg. 8th ed. § 1080. In this instance at the time of the defendant's purchase of Rassilyer's title it was acting in its own behalf as a creditor and it did not own but held merely as pledgee the first mortgages pledged by the plaintiff. Hence, the estates did not meet in the defendant in the same right. In equity mergers are sometimes found to exist where there is no legal merger, and they may be found not to exist where every element of a legal merger is present. Equity proceeds upon the basis of the intention and interests of the party in whom the estates meet (see May v. Cummings, 21 N. D. 281, 130 N. W. 826), and if such owner has an interest in keeping the estates distinct equity will not, without controlling evidence of intention to the contrary, decree a merger contrary to such interest. See Jones, supra. In the instant case there is no basis whatever for presuming an intention on the part of the defendant to merge the lien of the first mortgages with the title acquired upon the execution sales. This would be in opposition to its own interest. It was only interested in the mortgages as a pledgee and to the extent of the indebtedness owing to it by the plaintiff. To deduce from the purchases at execution sales, subject to the mortgages, an intention to merge the mortgages with the title acquired, would be, in legal effect, to foist upon the purchaser an assumption of the mortgage indebtedness when his interest in that indebtedness extended only to a fractional portion. Furthermore, the plaintiff was primarily liable for the debt for which the mortgages were pledged and was at all times in position to redeem the pledge by paying her indebtedness and reclaiming the mortgages. We think it clear from what is said above that the defendant in proceeding as a creditor of Rassilyer in the attempt to dispose of his title and thus to realize something upon its claim, as any other creditor might have done, violated no obligation which it owed as pledgee of the plaintiff's first mortgages; that in becoming the purchaser at such sales the mortgages did not become merged with the titles acquired by the defendant but that the pledge remained intact.

It remains to be seen whether the defendant violated any obligation as pledgee by not taking steps earlier to realize upon the mortgages. The plaintiff, as well as the defendant, knew when the Rassilyer notes

were due. She knew when the mortgages were in default. She knew they were not being foreclosed, She made no demand for their foreclosure. She renewed her note at the bank with knowledge that the Rassilyer notes were overdue and the mortgages in default. Section 6790 of the Compiled Laws of 1913 authorizes the pledgee to collect any evidence of debt pledged to him, but the language is permissive. It says that he "may collect," not that he must collect. The law does not require a pledgee of secured choses in action to proceed promptly at his peril to realize upon the security, especially where the debt for which the collateral is pledged is renewed from time to time with knowledge that the collateral is overdue and unpaid. The following expressions from Jones on Collateral Securities 3rd ed. sufficiently state the obligation of the pledgee in regard to the collateral.

"Section 667. But a pledgee is not bound to collect the collateral security upon its maturity, before the maturity of the principal debt, except upon the request of the pledgor, or in pursuance of an express contract to do so. . . ."

But in the case of commercial or negotiable paper the pledgee may be required to use reasonable diligence in the collection. Section 692. But in such case "What constitutes negligence in the collection of such collateral security is a question of fact to be determined according to the circumstances of the case. Greater diligence may be required in case the creditor is aware that the maker of the collateral paper is in embarrassed circumstances, than would be required in case the maker was supposed to be wholly responsible. . . ."

"A creditor holding negotiable paper as collateral security is required to use a different kind of diligence from that required of one holding merchandise or other corporeal property; and yet the diligence in each case is only such as is appropriate to the nature of the property. If the property be precious stones, safe keeping is all that is required. If it be grain, it must be properly stored and protected from all injury. The diligence required of the holder of promissory notes or other securities for the payment of money has reference to the danger that the parties liable on them may become insolvent and unable to pay. A prudent business man will collect such obligations when they are due, or will endeavor to enforce them by suit; if, therefore, a creditor neglects to enforce the collection of such securities held in pledge, and

delays till the parties become insolvent, he is as much guilty of neglect as if he had suffered grain held in pledge to be destroyed by dampness or heat for lack of proper storage." Section 700. But the burden is upon the debtor in such case to show that he has sustained loss by reason of the pledgee's negligence. Section 705. And if the delay was with the debtor's consent the loss may not be said to be occasioned by the pledgee's negligence. Section 707. In the instant case there is no evidence of any damage to the plaintiff debtor by reason of the delay in instituting the foreclosure proceedings. It is not shown that the mortgages depreciated in value. Hence, no basis is shown for liability on the ground of negligence.

Neither is there any basis for liability on account of the bid at the foreclosure sale of the real estate being less than the amount due on the mortgage note. The defendant notified the plaintiff that at such sale it would bid only the amount of her debt for which the mortgage was held as security and that if the plaintiff desired to protect herself to any greater extent she should be represented at the sale. The indebtedness of the pledgor to the pledgee was overdue. The pledgor was given an opportunity to fully protect herself and had she performed her legal obligation she could have assumed entire control of the securities and the foreclosure proceedings. At it was, the pledgee owed only the duty of exercising good faith in disposing of the property at the foreclosure sale. By giving an explicit notice as to the amount it would bid and bidding accordingly, the pledgee fully performed every duty it owed so far as the bidding was concerned. See Jones, Collateral Securities, 3rd ed. § 659b.

There is additional argument to the effect that the foreclosure of the chattel mortgage was irregular in that the property was sold in bulk and at a place other than the regular place for conducting such sales. The record contains no evidence tending to show that any damage resulted to the plaintiff or that she used any diligence to prevent any such irrgularity, although she was notified in advance as to the time and place of the sale.

The judgment must be affirmed. It is so ordered.

CHRISTIANSON, Ch. J., and BURKE, NUESSLE, and BURR, JJ., concur.