Walter B. Maulding, President of People's Bank, Macedonia, Illinois, Appellant, v. Chester C. Sims.

Walter B. Maulding, President, etc., v. Chester C. Sims and Sarah E. Sims, Appellees.

1. Mortgages, § 182*—*rights of second mortgagee purchasing at foreclosure sale on taking assignment of first mortgage.* A second mortgagee who purchases on foreclosure of his mortgage and takes a master's certificate, and later a deed, cannot take an assignment of the first mortgage debt and enforce it personally against the original owner and mortgagor.

2. Mortgages, § 602*—*what are rights of purchaser at foreclosure sale as to enforcing prior liens.* A purchaser under foreclosure of a real estate mortgage buys the property subject to prior liens of record, and has no right to enforce them himself or to have them enforced in a personal action against the original debtor.

3. Mortgages, § 180*—*when first and second mortgages merged.* The purchase of a first mortgage and note secured thereby by the purchaser and owner of the land under foreclosure of the second mortgage operates as a merger so as to bar personal action against the original mortgagor.

Appeal from the Circuit Court of Hamilton county; the Hon. Julius C. Kern, Judge, presiding. Heard in this court at the October term, 1918. Affirmed. Opinion filed April 12, 1919.

J. H. Lane and Creighton & Thomas, for appellant.

John M. Eckley and H. Anderson, for appellees.

Mr. Justice Boggs delivered the opinion of the court.

By stipulation the above two cases were consolidated and tried as one case. The facts in the two cases are identical except as to parties, dates and amounts. The two suits were brought by appellant in assumpsit, as assignee of two promissory notes, one dated October 18, 1905, executed by Chester C. Sims for

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

$250, payable 3 years after date to the trustees of schools for Town Six (6), Range Five (5) in Hamilton County, and the other note, dated September 30, 1904, was executed by Chester C. and Sarah E. Sims for $250, payable 3 years after date to John H. Wilson. Both of said notes were secured by mortgages of even date with said notes respectively, and were duly filed for record and were recorded in Hamilton county.

On February 21, 1913, appellee Chester C. Sims became indebted to appellant in the sum of $2,237.13, and executed his note in that amount to appellant and also a mortgage to secure the same which covered the lands formerly mortgaged to said trustees aforesaid, and other lands. This note not having been paid, appellant, on March 4, 1914, obtained a decree of foreclosure against lands of appellee, including the 40-acre tract mortgaged to said trustees aforesaid, and which the record showed was unsatisfied. The master in chancery sold all this land so mortgaged to appellant for the amount of his mortgage, interest and costs, and afterwards executed a master's deed to appellant for said premises.

Afterwards, on or about December 15, 1914, appellant purchased from said trustees the note of appellees and took an assignment of the mortgage securing the same, thereby becoming the owner of both the certificate of purchase for the mortgaged premises, and the note and mortgage on the 40-acre tract. Both were held by appellant until the period of redemption from said sale had expired, and on August 15, 1915, received a master's deed for all of said premises.

The gist of the defense to the suits at bar is: that having purchased the mortgaged premises at foreclosure sale, taking a certificate of purchase therefor and while holding the same, becoming the owner of the notes and mortgages respectively given to Wilson and said trustees and having taken assignments thereof and thereafter having received a conveyance of said premises by master's deed, that a merger in law was

effected, which operated as a satisfaction of said notes.

The declaration in each case is in the usual form, containing one count on the note sued on and the consolidated common counts. The general issue and three special pleas were filed to each of said declarations. A demurrer was interposed to the three special pleas and was sustained as to the second and third pleas and overruled as to the fourth. Replications were filed to the fourth plea in each case, to which defendants demurred. The demurrers being sustained, by leave of court amended replications were filed and the court having sustained demurrers thereto, appellant elected to stand by his replications. The court thereupon gave judgment for defendants respectively for costs upon the fourth plea. Said cause was then tried upon the declaration and plea of the general issue. After the evidence was in, appellant entered a motion for a directed verdict in his favor for the amounts shown to be due on notes, and appellees respectively entered motions for a directed verdict in their favor. The court denied the motion of appellant and allowed appellees' motion, rendered judgment against appellant in bar of action and for costs.

The principal question raised by the error assigned on the record is as to whether the indebtedness covered by the mortgage to the trustees of schools and the mortgage to Wilson became merged upon appellant receiving the conveyance from the master in chancery. In other words, did the estate created by the mortgages covering the two notes here sued on merge with the estate received by appellant from the master in chancery, and did the indebtedness here sued on become merged or wiped out at that time.

In *Belleville Savings Bank v. Reis*, 136 Ill. 242, the Supreme Court in discussing this question says: "It is not denied, that the purchase by the appellant of the property under the state of facts above set forth would operate in equity as a payment or extinguish-

ment of the debt secured by the mortgage, if the certificate of purchase had been surrendered and a master's deed had been executed. When one, who is absolutely entitled in his own right to a charge or incumbrance upon land, becomes the owner in fee of the same land, with no intervening interest or lien, the charge will at law merge in the ownership and cease to exist. Under like circumstances a merger will take place in equity where no intention to prevent it has been expressed, and none is implied from the circumstances and the interests of the party. (2 Pomeroy's Eq. Jur., sec. 790.) The premises in such case become the primary fund for the payment of the mortgage, and whoever acquires that fund and the mortgage also must be regarded as having applied the fund to the payment of the mortgage. (*Lilly v. Palmer,* 51 Ill. 331; Jones on Mortgages, sec. 865.) The indebtedness will be presumed to have been discharged so soon as the holder of it becomes invested with the title to the land upon which it is charged, 'on the principle that a party may not sue himself at law or in equity.' 'The purchaser is presumed to have bought the land at its value less the amount of indebtedness secured thereon, and equity will not permit him to hold the land and still collect the debt from the mortgagor.' (*Biggins v. Brockman,* 63 Ill. 316; *Weiner v. Heintz,* 17 Ill. 259; *Shinn v. Fredericks,* 56 Ill. 439.)''

The fourth plea in this case sets up the giving of the notes sued on in this case and the mortgage securing the same,—the giving of the note of $2,237.13 to appellant with the mortgage securing the same,—the foreclosure of said mortgage, and the purchase of the premises mortgaged at master's sale, for debt, interest and costs, and the assignment of the note sued on in this case, together with the mortgage securing the same to appellant. The replication to said plea, to which a demurrer was sustained, charges among other things: "that the amount of the said note * * * was not included in the sale of said land * * * and

that plaintiff paid  *  *  *  the then full, fair cash market value of the said land  *  *  *  and that, at the time plaintiff purchased said land at said master's sale, said note was long past due and plaintiff did not know it was unpaid and did not include the amount due thereon in his bid for said land at said sale and did not purchase said land subject to the amount due on said note;  *  *  *  and in order to save the expense and costs of such proceedings plaintiff thereupon on, to-wit, December 15, 1914, purchased the said note  *  *  *  for a valuable consideration," prays judgment, etc.

It is the contention of appellant that at the time of the purchase by him of said premises he did not know that the notes here sued on were outstanding and unpaid, and that in order to protect himself from a foreclosure on said mortgages he purchased said notes and took an assignment of the mortgages securing them, and that by reason of his allegation of lack of knowledge that the notes had not been paid and that he had paid full value for said premises, he is entitled to maintain his suits herein. The mortgages securing the notes sued on were filed for record in Hamilton county and were of record on February 21, 1913, the time appellant took the mortgage securing the note of $2,237.13, so he must have known at that time that these mortgages were then existing. It was his business to advise himself at that time as to whether or not these notes had been paid, and the failure to do so cannot avail him. *Campbell v. Carter*, 14 Ill. 291; *Gallaher v. Herbert*, 117 Ill. 160; *Lanphier v. Desmond*, 187 Ill. 370; *O'Connor v. Mahoney*, 159 Ill. 69.

In *Campbell v. Carter, supra,* the court at page 291 says: "The fact that Farwell had no actual knowledge of the bank judgments forms no basis for equitable relief. He had constructive notice of their existence, and that bound him as effectually as would express notice. He must be deemed to have acted upon full knowledge of those judgments. It was his

own fault if he did not obtain the information before concluding the arrangement. He acted upon a misapprehension of his legal rights, and not upon a mistake of facts."

In *Gallaher v. Herbert, supra,* the court says: "The appellants took whatever rights they may have, with notice, by the record of the deed, of all its reservations in favor of the appellee." Citing *Willis v. Gay,* 48 Tex. 463, 26 Am. Rep. 328.

In *O'Connor v. Mahoney, supra,* the court at page 77 says: "But, outside of this source of information, O'Connor was bound to take notice of all the facts suggested by the record of title, the physical condition and occupancy of the property, and doing so he had information enough to prompt him to such further reasonable inquiry as, if made, would have advised him of the equities complainants now assert." Citing *McVey v. McQuality,* 97 Ill. 93.

Neither do we believe that appellant is in a position to urge his claim that he paid the full value of this land free and clear of the mortgages securing the notes here sued on, for it is not averred in his replication that in the mortgage given by appellee to secure the note of $2,237.13 there was a covenant that he was seized of the premises in fee simple free and clear of all incumbrances. The conclusion would therefore follow that appellee Sims only mortgaged his equity of redemption, as that would be all he had a right to mortgage, and when appellant foreclosed the same, that is all he could foreclose and sell. To allow appellant to enforce the payment of the notes here sued on would in effect be to vest in appellant the fee simple title to the premises involved clear of the mortgage indebtedness that existed against the same at the time he received his mortgage, and at the time he foreclosed the same. There is no reason either in law or in equity, so far as we can see, why he should be entitled to this advantage.

In *Donk Bros. & Co. v. St. Louis Glucose & Grape*

*Sugar Co.*, 17 Ill. App. 369, this court in discussing a question of a similar character at page 375 says: "Purchasing the property in this manner, it became in the hands of appellant company the primary fund between all the parties out of which these liens should be discharged (*Comstock v. Hitt*, 37 Ill. 542; *Fowler v. Fay*, 62 Ill. 375), as fully as though the grantee had assumed their payment in the deed, this latter assumption by a grantee not having any greater effect to subject the property to such payment than the former, but giving to the lien holder a personal action against the grantee. 1 Jones on Mortgages, sec. 736; *Sweetzer v. Jones*, 35 Vt. 317.

"In either case, the company, in order to become invested with the entire estate in the property, must see to it that the incumbrances are discharged, and as between it and its vendor, the primary duty was cast upon it to do so (*Shuler v. Hardin*, 25 Ind. 386); and it is said in *Cherry v. Monro*, 2 Barb. Ch. (N. Y.) 618, where the equity of redemption was purchased subject to an outstanding mortgage, that the purchaser had no legal right to have the mortgage debt ·charged upon the mortgagor personally instead of charging it upon the land upon which it was charged by the mortgage.

"The purchaser of an equity of redemption subject to existing liens is only entitled to what he purchases, and while he may not be personally liable for their payment as he has not promised to pay them, it is his duty to pay them or surrender the property in their discharge; and to allow him to compel his grantor to discharge the incumbrance on the ground of a personal liability for the debt would in effect invest him with the entire estate free from all liens when he took it specially charged therewith. The injustice of such a proceeding is so apparent that courts of equity in cases where the lien creditor has enforced payment of the debt thus charged upon the land from the mortgagor have not hesitated to subrogate him to all the rights of the creditor by considering him as the equi-

table assignee of the mortgage lien, and thus permit him to subject the premises to sale to reimburse him for such payment. * * *

"A grantee, therefore, under such a sale to him, cannot, by paying the lien creditor the amount of the incumbrance, take an assignment of the debt to himself and hold it as a valid claim against his grantor, nor use it as a set-off in an action by the vendor for the purchase money * * *; and having become the owner of the lien and, as between him and his vendor, the primary obligation, if he would save his purchase, resting upon him to pay the debt the law treats the assignment to himself as a payment of the debt and the land discharged therefrom. *Converse v. Cook,* 8 Vt. 164; *Lilly v. Palmer,* 51 Ill. 331."

This case was appealed to the Supreme Court and was affirmed in 117 Ill. at page 330, and in discussing this feature of the case, at page 337 says: "And hence, when the appellant company, after it became the owner, subject to these attachments, of all the property attached except that which had been sold as perishable, purchased and became the assignee of the Donk judgment, it occupied, to the extent of the amount of that judgment, the position of both debtor and creditor, and in such cases there is a merger of the qualities of debtor and creditor, extinguishing both. Abbott, in his law Dictionary, vol. 3, title, 'Merger,' says: 'Merger is the equivalent of confusion in the Roman law, and (when used with reference to demands) indicates that where the qualities of debtor and creditor become united in the same individual, there arises a confusion of rights which extinguishes both qualities; whence, also, merger is often called extinguishment.'"

In *Lilly v. Palmer,* 51 Ill. 331, the Supreme Court at page 332 in discussing the question of merger says: "The status of the plaintiff then, was this: By the conveyance from Backer, and from Hall, the first mortgagee, the estates of both mortgagor and mort-

gagee become vested in him. The deed from Palmer to Backer made the land the primary fund for the payment of the notes to Hall, of which the note in suit was one, and when the plaintiff took the deed from Backer, he became the owner of that fund, and he then stood in the attitude of a mortgagee who had effected a strict foreclosure."

These last-mentioned cases are all law cases and we think are directly in point, and if the doctrine laid down in these cases is the correct one, there can be no right of recovery in the cases here involved. So far as the record discloses, appellant purchased at the foreclosure sale the premises covered by the mortgage to him, subject to the mortgage indebtedness to the trustee of schools and Wilson. After the sale to him, appellant took an assignment of the notes and these mortgages, and in law it amounted to a payment therefor, it being a matter of indifference whether the indebtedness be paid directly, or whether an assignment is taken to the person who holds the fee.

For the reasons above set forth the judgment of the trial court will be affirmed.

*Judgment affirmed.*