WRIGHT, Appellant, v. ANDERSON, et ux, Respondents.

(253 N. W. 484.)

(File No. 7599.   Opinion filed March 6, 1934.)

C. E. Noel, of Highmore, and O'Keeffe & Stephens, of Pierre, for Appellant.

Stover & Jaynes, of Watertown, for Respondents.

CAMPBELL, J. In 1922 defendant J. Q. Anderson borrowed $17,000 from Mitchell Trust Company, which indebtedness was represented by seventeen promissory notes in the principal sum of $1,000 each, due in 1928, which notes were also signed by Clara L. Anderson (wife of the borrower) and were secured by first mortgage on a number of pieces of real property. Prior to the due date thereof, and in June, 1927, these seventeen notes and the mortgage securing the same were sold and assigned by Mitchell Trust Company to J. H. Wright, now deceased. A short time prior to purchasing these notes and the mortgage Wright loaned J. Q. Anderson $23,000, taking therefor the promissory note of J. Q. Anderson in that amount, signed by himself alone, due in one year, together with a mortgage securing the same, which mortgage covered the same property, previously mortgaged to secure the $17,000 indebtedness together with some 640 acres of other real estate, and which mortgage recited that it was subject to the $17,000 mortgage originally given to Mitchell Trust Company. J. H. Wright presently died, being at the time of his death the owner of the seventeen $1,000 notes and the $23,000 note and the two mortgages respectively securing such notes. After his death, the present plaintiff, his executrix, instituted an action in the circuit court in Hyde county, S. D., for the foreclosure of the $23,000 second mortgage. In that action plaintiff secured judgment practically by consent, a stipulation being entered into between plaintiff and the Andersons agreeing to material facts necessary to establish plaintiffs right to foreclose, stipulating the amount of attorney fees that might be allowed and taxed "in the event that plaintiff secures judgment herein," stipulating the order in which the land should be offered for sale "if the plaintiff shall secure judgment herein," and further stipulating "that in the event the plaintiff herein obtains judgment and decree of foreclosure, that the said plaintiff will bid at the sale upon execution of the mortgaged premises the full amount due upon said mortgage indebtedness together with interest and all costs."

Judgment was rendered in favor of plaintiff in the action for the foreclosure of the second mortgage; the land was offered for sale in said action as stipulated; and plaintiff, pursuant to her stipulation, bid at the foreclosure sale the sum of $36,190, being the full amount then due on said $23,000 second mortgage together

with interest and costs; sheriff's certificate of sale issued to plaintiff in the usual form; the sale was approved and confirmed; and subsequently sheriff's deed issued to plaintiff.

Thereafter, and in November, 1932, plaintiff instituted the present action in the circuit court of Brule county, S. D., seeking a personal judgment against the defendants upon the seventeen $1,000 notes originally given by them to Mitchell Trust Company in 1922, as hereinbefore recited. At the time of starting this action plaintiff procured the levy of attachment on certain property of the defendants in Brule and Buffalo counties, S. D., which said attachment was thereafter by order of court on application of defendants dissolved. From the order dissolving said attachments, plaintiff has perfected a separate appeal to this court (Wright, Executrix, v. Anderson et al, 62 S. D. 455, 253 N. W. 490). Subsequently to the dissolution of the attachments defendants answered in the cause reciting the facts generally as above set out and claiming that the acquisition of the security by plaintiff upon foreclosure of the second mortgage (she being then the owner and holder of the first mortgage and the indebtedness thereby secured) satisfied the first mortgage indebtedness and that defendants were no longer liable thereon. Plaintiff endeavored to show at the trial that she did not intend any extinguishment of the indebtedness secured by the first mortgage held by her, and did not intend that her purchase at the foreclosure sale on the second mortgage should release the personal obligation of the defendants on the seventeen $1,000 notes. Plaintiff offered to prove that the clear unincumbered value of all the land covered by the mortgage in question did not exceed at the time of foreclosure the sum of $20,000, and that she bid the sum of $36,190 therefor at foreclosure sale, grossly in excess of the unincumbered value thereof, solely because the Andersons desired her so to do and because the $23,000 note was signed by J. Q. Anderson only and she believed him entirely worthless and execution-proof and thought that the realty in question was all she would ever be able to get out of the $23,000 note and she was therefore willing to bid the full amount due on said note for that realty, thinking that a deficiency judgment against J. Q. Anderson would be entirely worthless. To all of this offered testimony defendants objected and their objections were sustained. Findings and conclusions were in favor of the defendants, the conclusions being as follows:

"I. That by reason of the purchase of said real estate by the plaintiff herein at the foreclosure sale upon the twenty three thousand dollar ($23,000.00) mortgage described in the Findings of Facts herein, and the receipt and acceptance by the said plaintiff of the Sheriff's Deed upon said foreclosure to the said property, the first mortgage indebtedness of seventeen thousand dollars ($17,000.00) sued upon by the plaintiff herein plus the interest thereon became by reason of said facts by operation of law discharged and fully paid.

"II. That by reason of said facts the defendants are in no wise indebted to the plaintiff herein upon the promissory notes or bonds sued upon and described in the Findings of Facts herein, or upon the coupons representing interest accruing thereon."

Judgment was entered thereon, from which judgment and from a denial of her motion for new trial plaintiff has now appealed.

■■ We are (somewhat reluctantly in the light of the facts in this particular case) compelled to the view that the judgment and order appealed from must be affirmed. We feel quite satisfied that appellant did not realize that proceeding in the manner she did proceed would release the Andersons from personal liability upon the first mortgage notes; that she would not have proceeded as she did if she had so realized; and that her bid upon foreclosure of the junior mortgage was equal to if not greater than the clear unincumbered value of the security. Appellant has neither pleaded nor proved, however, that she was deceived or defrauded into acting as she did act and the fact that she did not realize the legal consequences of her procedure cannot change the situation in which she has placed herself. When a junior incumbrance is foreclosed, the thing that is offered for sale, as a matter of fact and law, is the equity in the premises over and above prior liens of record. That is the thing for which it must be assumed every offeror makes his bid and that is the thing that the successful bidder pays for and receives. The purchaser is under no obligation to pay more than the equity is worth. Boyce v. Hawn (1927) 52 S. D. 53, 216 N. W. 589. Such purchaser (whether it be the holder of the junior incumbrance or a stranger) takes the property subject to prior liens of record and in the hands of such purchaser the land itself has become the primary fund for the payment of the prior

liens, and, if such purchaser is already or subsequently becomes the owner and holder of such prior liens, they are deemed (as between such purchaser and the original makers) discharged out of the land and he cannot resort to the makers' personal liability thereon. That has been the clearly announced law of this state at least since the case of Bank of Ipswich v. Wilson (1928) 52 S. D. 563, 219 N. W. 246.

It is suggested that the result required in this case by the application of the doctrine announced in the Bank of Ipswich Case may be avoided on the theory that the matter turns upon a question of merger, which depends always on the intent of the parties and will not be deemed to have occurred against the best interests of a party. It may freely be conceded that equity will not deem a merger to have occurred contrary to the intention or interests of the party involved, but the difficulty of applying that rule to this case is that the situation does not (precisely speaking) involve a question of merger at all, though it does involve a doctrine which is in some respects somewhat analogous to merger, and which is sometimes loosely (and confusingly) referred to under that head.

The doctrine of merger, properly speaking, is a common-law doctrine having to do with estates in or charges upon realty.

" * * * Whenever a greater estate and a less coincide and meet in one and the same person, without any intermediate estate, the less is immediately annihilated; or, in the law phrase, is said to be merged, that is sunk or drowned in the greater. Thus, if there be tenant for years, and the reversion in fee simple descends to or is purchased by him, the term of years is merged in the inheritance, and shall never exist any more." Blackstone, Book II, p. 177.

Coline Oil Co. v. Cannon (1930) 144 Okl. 133, 289 P. 763. This same doctrine of merger is applicable to charges upon realty. Suppose that land is purchased subject to two prior mortgages. The purchaser of the land may take an assignment of the first mortgage and it will not merge in his fee, but he may enforce the lien of it as against the second incumbrancer. There is no equitable reason why he should not. The second incumbrancer took ab origine subject to the first incumbrance. Indeed he cannot avail himself of an inadvertent satisfaction thereof (Bennett v. Camp-

bell [1925] 48 S. D. 285, 204 N. W. 177), and there is no equitable reason why his status should be gratuitously improved so far as concerns the respective liens upon the realty merely because the owner of the ultimate equity of redemption has taken an assignment of the prior lien. Hence there will be no merger though, generally speaking, there would be if there were no intervening incumbrance.

We are faced here with a different case, however. We are not dealing with any question of the persistence of a lien or charge upon real estate or with a question of whether such lien or charge would or would not merge in the fee. The question here involved has nothing to do with any estate in the land, but is a question of whether the personal liability of the maker of a mortgage has been extinguished. The applicable doctrine, though sometimes discussed in the phraseology of merger, is more properly spoken of as "extinguishment" or "confusion of rights." It goes back through the civil law to the Roman law doctrine of "confusio" whereby the concurrence in the same person at the same time of the characters of debtor and creditor with respect to the same debt extinguishes the debt. The fundamental principle is that a man cannot be both debtor and creditor with respect to the same debt at the same time and when a situation arises where the hand that is obligated to pay the debt is the same hand that is entitled to receive it, the debt is extinguished and forever gone. Pointing out the distinction between this doctrine of extinguishment and the doctrine of merger properly so called, see Woods v. Ridley (1850) 11 Humph. (30 Tenn.) 194; Booth v. Kinsey (1852) 8 Grat. (49 Va.) 560; Strout v. Natoma, etc., Co. (1858) 9 Cal. 78; Donk v. Alexander (1886) 117 Ill. 330, 7 N. E. 672; Muscogee Mfg. Co. v. Eagle & Phenix Mills (1906) 126 Ga. 210, 54 S. E. 1028, 7 L. R. A. (N. S.) 1139.

When land is purchased subject to an incumbrance and the purchaser assumes the incumbrance, he becomes personally liable therefor, and, of course, as between himself and the original mortgagor, the debt is his. Manifestly, he cannot go out and buy it up and then sue the mortgagor. When a purchaser buys land subject to a mortgage (without assuming it), he does not become personally liable thereon, but nevertheless an equitable relation arises between himself and the original mortgagor. By virtue of having purchased subject to the mortgage, the land becomes the

primary fund for the payment of the mortgage debt. Zastrow v. Knight (1930) 56 S. D. 554, 229 N. W. 925, 72 A. L. R. 379; Steinmetz v. Schultz (1932) 59 S. D. 603, 241 N. W. 734. In theory, as between the purchaser and the original mortgagor, the mortgagor has already advanced to the purchaser the amount of the mortgage debt by receiving that much less than the market value of his land at the time of the sale. In other words, it is presumed that the purchaser of land subject to a mortgage deducted the amount of the incumbrance from the market value of the land when he bought. The mortgagor therefore has an equitable right to have the land pay the mortgage before his personal liability is called upon and the purchaser will not be permitted to retain the land, go out and acquire the mortgage, and enforce the same against the mortgagor personally. The doctrine has application whenever land is purchased subject to a mortgage, whether the purchase be by private treaty or at foreclosure or execution sale. In any such case the only thing that can be sold, and the thing that is sold and purchased, is an equity of redemption; and a purchaser who was willing to pay money for the equity of redemption will not be heard to say, as against the persons liable on the prior incumbrance, that the land (the primary fund for the discharge of the prior incumbrance) is not worth the amount thereof. It follows therefore that when the purchaser, retaining the land, acquires the prior debt, although he is not personally liable thereon, he is the owner of the res which ought to discharge the debt as between himself and the mortgagor and he will not be permitted to retain the res and at the same time to say it is insufficient to satisfy the debt. Consequently there is, in essence, a coincidence of the capacities of debtor and creditor and, as between the purchaser and the original mortgagor, the debt is extinguished, notwithstanding the fact that there may be no merger and notwithstanding the fact that the purchaser may maintain the validity of the lien upon the land as between himself and an intervening subsequent incumbrancer who was a stranger to his purchase.

"The conveyance by the mortgagor of the mortgaged premises, 'subject to' the mortgage in question, to Comstock conveyed to him the equity of redemption only, and consequently the mortgage was to be discharged and satisfied out of those premises, before any **right or interest therein was** acquired by the grantee, and as be-

tween those parties it is clearly equitable that such discharge and satisfaction should be made out of the said premises, and that the obligor and mortgagor should not, in exoneration thereof, personally be called upon to pay the same out of individual property. The effect of the transaction was in equity to make the land the primary fund for the payment of the debt, and to place the plaintiff in the situation or relation of surety therefor only. This principle is clearly established. (See Jumel v. Jumel, 7 Paige, 591-594; Halsey v. Reed, 9 Paige, 446-453, etc.; Marsh v. Pike, 10 Paige, 595; Cherry v. Monro, 2 Barb. Ch. 618; Ferris v. Crawford, 2 Denio, 595; Stebbins v. Hall 29 Barb. 524, 529, 538." Johnson v. Zink (1873) 51 N. Y. 333.

"As a general rule, a conveyance of property subject to a mortgage imposes no personal liability on the grantee. It, however, raises a presumption that the purchaser buys the property to the extent stated, and that he takes his chances of realizing out of the property enough, over and above the mortgage, to indemnify him for his advance of purchase money. The fair inference is, that the purchaser does not pay the vendor the full value of the property, but that the amount of the mortgage debt is reserved in his hands as so much purchase money for the purpose of discharging the lien. In such case, the land conveyed is as effectually charged with the amount of the mortgage as if the purchaser had expressly assumed its payment. As between the vendor and the purchaser of the equity of redemption, the land is the primary fund for the liquidation of the incumbrance. See Daniel v. Leitch, 13 Grat. [54 Va.] 195, 206; Jumel v. Jumel, 7 Paige, 591; [Vanderkemp v. Shelton] 11 Paige, 28; Stebbins v. Hall, 29 Barb. 524; Jones on Mortgages, §§ 736, 740-8-9, 756." Gayle v. Wilson (1878) 30 Grat. (71 Va.) 166.

"It is familiar doctrine that the purchaser of an equity of redemption by deed without covenants takes the estate charged with the payment of the mortgage debts, and it is presumed, in the absence of any special contract, that the amount paid or agreed to be paid was the value of the property, less the amount of the incumbrances, and it is for the purchaser, and not the seller, to discharge these liens. Iowa L. & Trust Co. v. Mowery, 67 Iowa, 113, 24 N. W. 747; Clift v. White, 12 N. Y. 534; Sweetzer v. Jones, 35 Vt. 317, 82 Am. Dec. 639; Guernsey v. Kendall, 55 Vt. 201; Tice

v. Annin, 2 Johns. Ch. 125. This same rule has been applied to purchasers at execution and foreclosure sales. Wade v. Howard, 6 Pick. 492; Bunch v. Grave, 111 Ind. 351, 12 N. E. 514; Shuler v. Hardin, 25 Ind. 386; Atherton v. Toney, 43 Ind. 211. In such cases the premises in the hands of the purchasers are primarily liable for the payment of the mortgage debt, and the judgment debtor is neither legally nor equitably bound to pay off the prior mortgage for the benefit of the purchaser. Russell v. Allen, 10 Paige, 249. Where land is purchased subject to a mortgage, the purchaser is not personally liable for the mortgage debt, but it remains an incumbrance on the estate. Jones, Mortg. § 738. After having paid these debts, a court of equity will not aid him in recovering back the money paid." Moore v. Olive (1901) 114 Iowa, 650, 87 N. W. 720, 721.

See, also, Dollar Sav. Bank v. Burns (1878) 87 Pa. (6 Norris) 491; Atherton v. Toney (1873) 43 Ind. 211; Bunch v. Grave (1887) 111 Ind. 351, 12 N. E. 514; Hansell v. Lutz (1853) 20 Pa. (8 Harris) 284.

It is urged in the instant case that when purchasing upon foreclosure of the second mortgage, the mortgagee in making her bid did not in fact take into consideration or make any allowance for the amount of the first mortgage. To that we believe the answer must be that she should have done so and unless she can make a showing of fraud, excusable mistake, or something of that sort, sufficient to justify vacating the sale, she must be deemed to have done so. She knew of the existence of the first mortgage for she owned it herself. She must be charged with knowing, as a matter of law, that the only thing that could be offered for sale in foreclosure of the second mortgage was the equity of redemption from the first mortgage. In an Illinois case a somewhat similar claim was made. The holder of a second mortgage foreclosed and purchased at the sale. Subsequently he paid the first mortgage, took an assignment thereof, and sought to enforce personal liability thereon against the mortgagor. The plaintiff specifically pleaded that the amount of the first mortgage debt was not in fact deducted from the purchase price when he bid at the foreclosure sale. He stated that he did not know that the first mortgage indebtedness was still outstanding and unpaid and did not compute the amount thereof in making up his bid, but that in fact

he bid and paid the full cash market value of the land with no deduction whatever on account of the first mortgage; but the court said that his failure to make proper allowance for the first mortgage when he was buying subject thereto could avail him nothing, and that since what he was buying was merely an equity of redemption, he must be deemed to have bid and purchased in the light of the existence of the prior incumbrance, the court pointing out that the only thing which could be covered by the second mortgage was the equity of redemption over the first mortgage and when the second mortgage was foreclosed that was all which could be sold. Maulding v. Sims (1919) 213 Ill. App. 473.

■ We cannot avoid the conclusion that as between respondents and appellant, personal liability on the first mortgage indebtedness was extinguished when appellant, owning said indebtedness, purchased the land subject to the first mortgage upon foreclosure of the second mortgage, thereby becoming at the same time the owner of the primary fund for the payment of the prior debt.

■ So far as concerns respondent Clara L. Anderson, there is, of course, a further reason why appellant cannot hope to prevail against her in this proceeding. It is specifically found by the court that the money received on the first loan of $17,000 was received by the respondent J. Q. Anderson solely, and respondent Clara L. Anderson in signing the notes was a surety only. The debt of J. Q. Anderson as principal for which she thus became surety being also secured by first mortgage lien upon the realty, it is clear upon the plainest principles of equity that Clara L. Anderson, as such surety, is entitled to the enforcement of that first lien for her protection. The land was subsequently incumbered by the principal debtor by second mortgage to secure a debt upon which he alone was liable and as to which respondent Clara L. Anderson was under no liabilty whatever, as surety or otherwise. Manifestly appellant, becoming the owner of both debts and both mortgages, cannot appropriate all the security to the subsequent debt and then enforce, as against Clara L. Anderson, her personal liability as surety upon the prior debt, having evidenced by the amount bid at the foreclosure sale that the value of the security was sufficient to discharge the prior debt. Appellant as creditor cannot apply the security first chargeable with the suretyship debt to subsequent obligations of the principal debtor to the damage of the surety on

the debt secured by the first lien. See Kuhns v. Westmoreland Bk. (1833) 2 Watts (Pa.) 136; Montgomery & Co. v. Martin (1894) 94 Ga. 219, 21 S. E. 513; Brown v. First Nat. Bk. of Newton (1902) 112 F. 901, 50 C. C. A. 602, 56 L. R. A. 876.

It follows that the judgment and order appealed from must be affirmed.

ROBERTS, P. J., and WARREN and RUDOLPH, JJ., concur.

POLLEY, J. (dissenting). I am not able to agree with the disposition made of this case by the majority of the court. It appears to be the theory of the majority that when a junior incumbrancer forecloses his mortgage and purchases the mortgaged property at the foreclosure sale and then purchases the notes secured by the prior mortgage, and takes on assignment of such mortgage, that the mortgaged property becomes a "primary fund" for the payment of both incumbrances and that the owner of the prior mortgage having acquired title to the property through a foreclosure of the junior mortgage, the prior debt becomes extinguished; and this regardless of whether the value of the land equals the amount of both debts or not. This appears to be the rule followed in Bank of Ipswich v. Wilson, 52 S. D. 563, 219 N. W. 246, but that case was tried and determined on its own facts, and the facts are that the bank foreclosed a second mortgage and bought the property for the full amount of the mortgage debt. The bank then purchased notes secured by a first mortgage and brought suit to obtain a judgment on the notes. The trial court admitted evidence which showed that the mortgaged property was worth more than the aggregate amount of both the incumbrances. In that situation the trial court applied the "primary fund" doctrine and held that both debts were extinguished and dismissed the action on the notes. The same procedure was followed with the same result in Sletten v. Bank, 37 N. D. 47, 163 N. W. 534.

Where the owner of a junior incumbrance purchases property at the foreclosure sale, he is presumed to bid the value of the property less the amount of the prior incumbrance. In that case the value of the property is sufficient to pay both debts and equity will declare that the prior debt is extinguished, but this presumption is rebuttable and where the full amount of the property is

paid on the second mortgage, the above rule does not apply. The court erred in rejecting evidence of the value of the property, and the judgment and order appealed from ought to be reversed.