BOARD OF TRUSTEES OF THE GENERAL RETIREMENT
SYSTEM OF THE CITY OF DETROIT v REN-CEN INDOOR
TENNIS & RACQUET CLUB

Docket No. 75311. Submitted November 8, 1984, at Detroit.—Decided
September 3, 1985. Leave to appeal applied for.

In 1978, the Board of Trustees of the General Retirement System
of the City of Detroit loaned $1.1 million to the Ren-Cen Indoor
Tennis & Racquet Club, receiving in return a promissory note
for that amount secured by a first mortgage on property located
at 37101 East Lafayette Street in Detroit. Charles H. Brown
was a guarantor of the note. In 1980 the retirement system
loaned the club an additional $500,000 and received a promis-
sory note and a second mortgage on the same property. The
club defaulted on both loans. The retirement system foreclosed
the second mortgage by advertisement, and purchased the
property itself at the foreclosure sale for the amount owed on
the second note. The retirement system took possession of the
property at the expiration of the redemption period and com-
menced an action in Wayne Circuit Court against the club and
Brown to recover the amount owed on the first note. Both
plaintiff and defendants filed motions for summary judgment.
Accompanying defendants' motion was an affidavit which
stated that on the date of the foreclosure sale the subject
property had a fair market value of more than $3 million. The
trial court, Irwin H. Burdick, J., granted plaintiff's motion and
denied defendants' motion. Defendants appealed. *Held:*

Since plaintiff was the holder of both the senior and junior
mortgages, the two became merged upon the foreclosure of the
junior mortgage. Since plaintiff seeks, in essence, a double
recovery by being able to purchase the property on foreclosure
of the junior mortgage at a depressed price because of the
existence of the senior mortgage without the fear of foreclosure
of the senior mortgage, equity will not prevent the merger of
the two debts upon foreclosure of the junior mortgage. It being

REFERENCES FOR POINTS IN HEADNOTE

Am Jur 2d, Mortgages §§ 533 *et seq.*

See the annotations in the ALR3d/4th Quick Index under topic
Mortgages § 5.

uncontroverted that the value of the property exceeded the merged indebtedness, by statute plaintiff was not entitled to proceed against defendants for any deficiency. The trial court erred in granting summary judgment in plaintiff's favor and in denying defendants' motion for summary judgment.

Reversed.

MORTGAGES — FORECLOSURE OF MORTGAGES — SECOND MORTGAGES — MERGER OF INTERESTS — EQUITY.

One who holds both the first and second mortgages on a property, who forecloses by advertisement the second mortgage, and who purchases the property at the foreclosure sale may not recover the amount owed on the note secured by the first mortgage where it is undisputed that the fair market value of the property exceeds the amount secured by both the first and second mortgages (MCL 600.3280; MSA 27A.3280).

*Clark, Klein & Beaumont* (by *M. V. Kell* and *Charles D. Bavol*), for plaintiff.

*Clark, Hardy, Lewis, Pollard & Page, P.C.* (by *Thomas Hardy* and *Charles H. Brown*), for defendant.

Before: GRIBBS, P.J., and D. E. HOLBROOK, JR. and N. J. LAMBROS,* JJ.

N. J. LAMBROS, J. In this action on a promissory note secured by a mortgage, the circuit court granted summary judgment for plaintiff pursuant to GCR 1963, 117.2(3), holding that there was no genuine issue as to any material fact and that plaintiff was entitled to prevail as a matter of law. Defendants' countermotion for summary judgment was denied, and defendants appeal as of right.

The affidavits and other evidence before the circuit court showed that on June 28, 1978, plaintiff loaned defendant Ren-Cen Indoor Tennis & Racquet Club $1.1 million and received a promissory note for that amount secured by a first mort-

* Circuit judge, sitting on the Court of Appeals by assignment.

gage on property located at 37101 East Lafayette Street in Detroit. Defendant Brown was the Guarantor of that note. On August 4, 1980, plaintiff loaned defendant club an additional $500,000 and received a promissory note for that amount secured by a second mortgage on the same property. Defendant club defaulted on both loans. Plaintiff foreclosed its second mortgage on the property at 37101 East Lafayette Street by advertisement pursuant to MCL 600.3201 *et seq.;* MSA 27A.3201 *et seq.,* and purchased the property itself at the foreclosure sale on August 31, 1982, for the amount owed on the second note. Plaintiff took possession of the property after expiration of the redemption period and commenced this action to recover the amount owed on the first note. Defendants submitted an affidavit, uncontradicted by any affidavit or other evidence submitted by plaintiff, indicating that the fair market value of the property was more than $3 million on August 31, 1982.

MCL 600.3280; MSA 27A.3280 provides in part:

"When, in the foreclosure of a mortgage by advertisement, any sale of real property has been made after February 11, 1933, or shall be hereafter made by a mortgagee, trustee, or other person authorized to make the same pursuant to the power of sale contained therein, at which the mortgagee, payee or other holder of the obligation thereby secured has become or becomes the purchaser, or takes or has taken title thereto at such sale either directly or indirectly, and thereafter such mortgagee, payee or other holder of the secured obligation, as aforesaid, shall sue for and undertake to recover a deficiency judgment against the mortgagor, trustor or other maker of any such obligation, or any other person liable thereon, it shall be competent and lawful for the defendant against whom such deficiency judgment is sought to allege and show as matter of defense and set-off to the extent only of the amount of

the plaintiff's claim, that the property sold was fairly worth the amount of the debt secured by it at the time and place of sale or that the amount bid was substantially less than its true value, and such showing shall constitute a defense to such action and shall defeat the deficiency judgment against him, either in whole or in part to such extent."

Pursuant to this section and the undisputed evidence as to the fair market value of the property, an action against defendants for a deficiency judgment could not have been successfully maintained if there had been one note and one mortgage here rather than two. Plaintiff was able to avoid this defense here, because there were two mortgages and two notes. Defendants argue, however, that the first promissory note, secured by the first mortgage, was discharged when plaintiff purchased the mortgaged property at the foreclosure sale on the second mortgage.

In *Blackwood v Sakwinski,* 221 Mich 464; 191 NW 207 (1922), the assignee of two mortgages on the same property foreclosed the first mortgage and purchased the mortgaged property at the resulting sale. The assignee then brought suit on the second mortgage note, but the circuit court held that the second mortgage had been destroyed by merger when the assignee acquired the mortgaged property and that the assignee was therefore estopped from obtaining a personal judgment on the note. The Supreme Court rejected the circuit court's reasoning, explaining:

"The doctrine of merger in satisfaction of the debt does not apply to this case. The purchaser at the foreclosure sale under his first mortgage did not assume payment of the second mortgage. He could no longer look to the security but he could look to the mortgagors on their note. The note and mortgage did not make the

land primarily liable for the debt, and plaintiff nowhere along the line has placed himself in a position to be held to look to the land alone for his money." 221 Mich 469.

A crucial distinction between *Blackwood* and this case is that in *Blackwood* the mortgaged property was purchased by the holder of both mortgages at a foreclosure sale on the first mortgage, while here the purchase was at a foreclosure sale on the second mortgage. A purchaser at a foreclosure sale of a second mortgage takes the property subject to the first mortgage. MCL 600.3236; MSA 27A.3236. The contrary is not true. The distinction was explained on Osborne, Mortgages (2d ed), § 274, p 553:

"The general rule is that the purchase of mortgaged property by the holder of a junior mortgage at a sale on foreclosure of the senior mortgage, does not extinguish the debt secured by the junior mortgage. And the same is true even though the foreclosed first mortgage also was owned by the purchasing second mortgagee. However, if the holder of both a junior and senior mortgage forecloses the junior and buys it in on foreclosure sale it is generally held that, in the absence of an agreement to the contrary, the mortgagor's personal liability for the debt secured by the first mortgage is extinguished. The reason given is that on foreclosure sale under a junior mortgage the purchase is subject to the payment of the prior lien with the result that 'the mortgagor has an equitable right to have the land pay the mortgage before his personal liability is called upon' and the purchaser, if he owns or acquires the mortgage, will not be permitted to enforce it against the mortgagor personally." (Footnotes omitted.)

See also Anno: *Union of title to mortgage and fee in same person as affecting right to personal judgment for mortgage debt*, 95 ALR 89, 103-104:

*"(b) Foreclosure of senior mortgage.*

"The general rule is that the purchase of mortgaged property by the holder of a junior mortgage, at a sale on foreclosure of the senior mortgage, does not extinguish the debt secured by the junior mortgage.

\* \* \*

*"(c) Foreclosure of junior mortgage.*

"On the ground that a sale on foreclosure of a junior mortgage is deemed to be subject to prior liens and liens in the hands of the purchaser, and that the purchaser is presumed to have made allowance for prior liens in making his bid, it is generally held that a purchase of the mortgaged property by the holder of junior and senior mortgages, on foreclosure of the junior mortgage held by him, extinguishes the mortgagor's personal liability for the debt secured by the first mortgage in the absence of an agreement to the contrary."

In *Belleville Savings Bank v Reis,* 136 Ill 242, 248-249; 26 NE 646 (1891), the Court explained:

"When one who is absolutely entitled in his own right to a charge or incumbrance upon land becomes the owner in fee of the same land, with no intervening interest or lien, the charge will at law merge in the ownership and cease to exist. Under like circumstances a merger will take place in equity where no intention to prevent it has been expressed, and none is implied from the circumstances and the interests of the party.

\* \* \*

"The premises, in such case, become the primary fund for the payment of the mortgage, and whoever acquires that fund and the mortgage also must be regarded as having applied the fund to the payment of the mortgage.

\* \* \*

"The indebtedness will be presumed to have been discharged so soon as the holder of it becomes invested with the title to the land upon which it is charged, 'on the principle that a party may not sue himself at law or

in equity.' The purchaser is presumed to have bought the land at its value, less the amount of indebtedness secured thereon, and equity will not permit him to hold the land and still collect the debt from the mortgagor." (Citations omitted.)

The economic basis for the rule was clarified in *Wright v Anderson,* 62 SD 444, 449-450; 253 NW 484; 95 ALR 81 (1935):

"When a purchaser buys land subject to a mortgage (without assuming it), he does not become personally liable thereon, but nevertheless an equitable relation arises between himself and the original mortgagor. By virtue of having purchased subject to the mortgage, the land becomes the primary fund for the payment of the mortgage debt. * * * In theory, as between the purchaser and the original mortgagor, the mortgagor has already advanced to the purchaser the amount of the mortgage debt by receiving that much less than the market value of his land at the time of the sale. In other words, it is presumed that the purchaser of land subject to a mortgage deducted the amount of the incumbrance from the market value of the land when he bought. The mortgagor therefore has an equitable right to have the land pay the mortgage before his personal liability is called upon and the purchaser will not be permitted to retain the land, go out and acquire the mortgage, and enforce the same against the mortgagor personally. The doctrine has application whenever land is purchased subject to a mortgage, whether the purchase be by private treaty or at foreclosure or execution sale. In any such case the only thing that can be sold, and the thing that is sold and purchased, is an equity of redemption; and a purchaser who was willing to pay money for the equity of redemption will not be heard to say, as against the persons liable on the prior incumbrance, that the land (the primary fund for the discharge of the prior incumbrance) is not worth the amount thereof. It follows therefore that when the purchaser, retaining the land, acquires the prior debt, although he is not personally liable thereon, he is the owner of the res which ought to discharge the debt as

between himself and the mortgagor and he will not be permitted to retain the res and at the same time to say it is insufficient to satisfy the debt. Consequently there is, in essence, a coincidence of the capacities of debtor and creditor and, as between the purchaser and the original mortgagor, the debt is extinguished, notwithstanding the fact that there may be no merger and notwithstanding the fact that the purchaser may maintain the validity of the lien upon the land as between himself and an intervening subsequent incombrancer who was a stranger to his purchase."

See also *McDonald v Magirl,* 97 Iowa 677; 66 NW 904 (1896), *Sletten v First National Bank of Carrington,* 37 ND 47; 163 NW 534 (1917), and *Baxter v Redevco, Inc,* 279 Or 117; 566 P2d 501 (1977).

Michigan follows the general rule about mergers mentioned in *Belleville Savings Bank v Reis.* At law, whenever a greater and lesser estate or a legal and equitable estate coincide in the same person, the lesser or equitable estate is destroyed by merger. Equity, however, will generally prevent a merger if the parties did not intend a merger, and an intent to avoid a merger will ordinarily be inferred where it is in the interest of the person holding the various estates to keep them separate. *Quick v Raymond,* 116 Mich 15, 18-19; 74 NW2d 189 (1898). Plaintiff must look to equity here to prevent the merger which would be automatic at law. As *Belleville Savings Bank v Reis, Wright v Anderson,* and similar cases show, equity is of no assistance to plaintiff under the circumstances presented here, because plaintiff seeks to avoid a merger to enable it to obtain, in effect, a double recovery.

The price at a foreclosure sale on a second mortgage is depressed to reflect the outstanding first mortgage. A third party who purchases the

property at the foreclosure sale on the second mortgage would have to satisfy the debt secured by the first mortgage in order to prevent the mortgagee of the first mortgage from asserting a superior claim to the property. Because plaintiff itself is the mortgagee of the first mortgage, plaintiff need not concern itself with the possibility that the mortgagee of the first mortgage would assert a superior claim. Plaintiff wants to obtain the price advantage of purchasing at a second mortgage sale without the disadvantage of having to satisfy the debt secured by the first mortgage in order to obtain uninterrupted enjoyment of the property. Equity will not assist plaintiff to achieve such a result. Instead, the debt secured by the first mortgage was discharged when plaintiff acquired the mortgaged property at the foreclosure sale on the second mortgage.

The circuit court erred by granting plaintiff's motion for summary judgment and by denying defendants' motion for summary judgment.

Reversed.