George T. ROSS, Appellant,

v.

The RIGGS NATIONAL BANK OF WASHINGTON, D.C., Appellee.

Civil Action No. 3:95cv362.

United States District Court, E.D. Virginia, Richmond Division.

Sept. 11, 1995.

Peter Ware Runkle, Obenshain, Hinnant, & Runkle, Richmond, VA, for appellant.

Samuel Miles Dumville, Hazel & Thomas, Richmond, VA, for appellee.

### MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on appellant George T. Ross's appeal, and upon appellee The Riggs National Bank's cross appeal, from the decision of the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division, Bankruptcy Case No. 92–34475–S, Adversary Proceeding No. 92–3194–S. For the reasons stated below, the Bankruptcy Judge's opinion is affirmed.

## I. *Opinion below.*

By its memorandum opinion of August 30, 1994, and supplemental memorandum opinion of March 22, 1995, the Bankruptcy Court found appellant Ross liable to appellee Riggs Bank for a non-dischargeable debt of $7,548,-905.56 plus interest. (Record Tabs 7 & 9). The Bankruptcy Court ruled the debt non-dischargeable because of false financial statements by Ross, and made, *inter alia,* the following findings of fact.

Ross was a general partner of Plaza One Associates, builder of the Richmond Airport Hilton hotel. The project was financed by bonds secured by a first deed of trust on the hotel. The first deed of trust was in favor of Dominion Trust, an affiliate of Dominion Bank, which served to receive Plaza One Associates' payments and disburse them to the bondholders. As a "credit boosting" measure, Riggs Bank issued a letter of credit which was backed by a personal guaranty from Ross and the other partners and also a second deed of trust on the hotel; this letter of credit was to be drawn upon if Plaza One Associates failed to make required payments on the bonds. A variety of parties eventually utilized the entire letter of credit, resulting in a debt of $7,771,875.00.

Ross and Plaza One Associates failed to reimburse Riggs Bank for the draws on the letter of credit. During this period, Riggs Bank sued Ross on the guaranty in this Court, and received a $212,969.44 judgment. *Riggs National Bank of Washington, D.C. v. George T. Ross, et al.,* Civil Action No. 90–00085–R (July 23, 1990). Riggs Bank later foreclosed on the second deed of trust (which secured the letter of credit) after several more failures by Plaza One Associates and after default under the terms of the letter of credit.

At the foreclosure sale, RBV, Inc., a wholly-owned subsidiary of Riggs Bank, bought the property for $10,000.00, subject to the first deed of trust. Riggs Bank then filed a complaint in the Bankruptcy Court to determine the dischargeability of Ross's debt on the second deed of trust. Because of Ross's earlier fraud on financial disclosure forms, the Bankruptcy Court found that the debt on the second deed of trust, $7,771,875.00, was

non-dischargeable. The Bankruptcy Court then deducted the $10,000.00 received from the bid of RBV, Inc. at the foreclosure sale, and further deducted the $212,969.44 which had earlier been reduced to judgment by the District Court. This left Ross owing $7,548,-905.56 to Riggs Bank. This is the amount of the judgment from which Ross now appeals.

The obligation of Ross to Riggs Bank is related to, but not based upon, the obligations under the first deed of trust. Ross entered a separate guaranty agreement for the benefit of Riggs Bank, based upon the letter of credit. Ross's guaranty is a separate, independent and primary obligation to pay Riggs Bank the amounts due under the reimbursement agreement and letter of credit. (Record Tab 7 p. 10 & Tab 9 p. 6–7).

Approximately nine months after the foreclosure sale, RBV, Inc. sold the property to a third party for $4.7 million, including $1 million in cash and a $3.7 million purchase money loan. However, appellant has conceded and appellee agrees that this subsequent sales price has no bearing on appellant's obligations to the appellee. (Record Tab 9 p. 3). The first deed of trust remained in place until approximately ten months after the foreclosure sale, and at the time of the foreclosure sale, the original holders of the first deed of trust maintained all of their rights. (Record Tab 9 p. 6).

## II. *Findings of fact and conclusions of law.*

### A. *Standard of review.*

This Court reviews the Bankruptcy Court's conclusions of law de novo. This Court may only reverse the Bankruptcy Court's findings of fact for clear error. *Butler v. Nationsbank, N.A.*, 58 F.3d 1022, 1026 (4th Cir.1995); F.R.Bankr.P. 8013 11 U.S.C.

### B. *Appellant's argument on appeal.*

Appellee's brief advances three arguments: first, that RBV, Inc. bid not merely $10,000, as found by the Bankruptcy Court, but bid the amount of the debt under the first deed of trust as well, so that Riggs Bank suffered no deficiency; second, that the primary fund

doctrine or doctrine of merger caused the debt under the first deed of trust to be legally extinguished upon Riggs Bank's acquisition of both deeds of trust; and third, that appellant deserves equitable relief because Riggs Bank may receive a windfall from the subsequent sale of the property by RBV, Inc.

### 1. *RBV, Inc. bid $10,000 subject to, not in addition to, the first deed of trust.*

The Bankruptcy Court repeatedly and clearly stated that it found the amount bid by RBV, Inc. at the foreclosure sale, and the total amount received by Riggs Bank, to be $10,000. RBV, Inc. took the property subject to the first deed of trust, but it did not actually bid the amount of the debt under either the first or second deed of trust. (Record Tab 9, p. 5, 6, 7 & 8).

Appellant Ross misinterprets the facts of the sale to RBV, Inc. Appellant contends that the deed itself "clearly shows" a sale in the amount of $7,459,314.15, not $10,000. (Brief of Appellant at 8). However, the deed shows a sale for $10,000 only, then in the next paragraph notes that this conveyance was made subject to all other liens, including the first deed of trust. (Record Tab 11 at appendix pg. 2–3).[1] There was no attempt to extinguish the first debt; in fact, the debt under the first deed of trust was explicitly preserved.

Appellant also contends that appellee's bank officer admitted that the RBV, Inc. purchase price included the $7 million deficiency. (Brief of Appellant at p. 9). However, the appellant quotes a portion of the record out of context, when immediately before the quoted portion the bank officer had actually said the bid was for "ten thousand dollars plus the assumption of 7.77 million dollars." (Record Tab 3 at p. 44). Regardless, the court below resolved this issue by its factual finding that the sale price was only the $10,000.

Finding no clear error, the Bankruptcy Court's factual finding is affirmed:

1. It should be noted that this deed was not ad-

mitted at trial as either evidence or an exhibit.

### 2. *Appellant's debt under the first deed of trust was not extinguished by merger or by the primary fund doctrine.*

■ Appellant argues that regardless of the factual finding of the Bankruptcy Court, the legal effect of RBV, Inc.'s purchase of the property, even subject to the first deed of trust, was to extinguish the first deed of trust. This argument assumes two steps: first, that RBV, Inc. and Riggs Bank should be treated as the same legal entity, and second, that applicable law can be found in *Wright v. Anderson, Mid Kansas Fed. S & L v. Dynamic Dev.,* and *Trustees v. Ren–Cen Indoor Tennis,* 62 S.D. 444, 253 N.W. 484 (1934); 167 Ariz. 122, 804 P.2d 1310 (1991); 145 Mich.App. 318, 377 N.W.2d 432 (1985). Both steps in this argument are unsound.

*Wright* held that when a purchaser buys land subject to a mortgage without assuming that mortgage, the land becomes the "primary fund" for extinguishing the debt. 253 N.W. at 488. *Wright* also held that where the purchaser at foreclosure of a second lien owns or subsequently acquires the rights under the first lien, the personal liability of the debtor is discharged and the debt can only be enforced out of the land. *Id.* 253 N.W. at 486. The present case differs from *Wright* in at least three ways, each sufficient to distinguish the case and apply the Bankruptcy Court's view of the law. First, Riggs Bank and RBV, Inc. are separate corporate entities and appellant has not made a showing that one is the alter ego of the other. Second, the unsuccessful plaintiff in *Wright* owned not just the second lien, as did Riggs Bank, but the first lien as well. Third, as the Bankruptcy Court made clear, appellant's obligation is not based directly upon a mortgage or deed of trust, but instead upon a personal guaranty.

Appellant's reliance on the other two cases is equally misplaced. *Mid Kansas* reiterated the primary fund doctrine's theme of a debtor's equitable right to have creditors look first to the land to pay the debt. 804 P.2d at 1318. *Ren–Cen Indoor Tennis* more fully explained this concept of merger of consecutive liens:

> it is presumed that the purchaser of land subject to a mortgage deducted the

amount of the incumbrance from the market value of the land when he bought. The mortgagor therefore has an equitable right to have the land pay the mortgage before his personal liability is called upon and the purchaser will not be permitted to retain the land, go out and acquire the mortgage, and enforce the same personally.

377 N.W.2d at 435. However, the same factors that make *Wright* inapplicable also serve to distinguish these cases; most importantly, Ross's obligation is not an "incumbrance" on the land but a personal guaranty. In addition, dicta in *Mid Kansas* embraces the view that the primary fund is inapplicable where, as appears to be the case here, the value of the property is less than the combined debt. *See* 804 P.2d at 1319. And *Ren–Cen Indoor Tennis* stands for the proposition that equity will prevent merger where the parties did not intend a merger. 377 N.W.2d at 436. Parties will not be found to intend a merger where it is in the interest of the party holding the separate estates to keep them separate. *Id.*

As the Bankruptcy Court emphasized below, the appellant's obligation was a personal guaranty, over and above his obligations under the deeds of trust. This was the financing structure freely chosen by the parties at the outset of the venture. As this case involves appellee's attempts to enforce its rights to deficiency under that guaranty, appellant is left only to his rights under the guaranty agreement. Appellant has not raised an argument as to how those rights have been violated.

The Bankruptcy Court's interpretation of guaranty law was correct, and is affirmed.

### 3. *Appellant is not entitled to equitable relief.*

■ Appellant bases his argument for equitable relief on the argument that Riggs Bank may receive a windfall by recovery. No such windfall is apparent from the record. First, appellant has conceded that RBV, Inc.'s subsequent sale price is not relevant to this case, and that the amount of the deficiency is to be determined at the time of the foreclosure sale. Second, even if subsequent

sales and payments were considered, and Riggs Bank and RBV, Inc. were assumed in equity to be the same entity, this entity would have paid out well over $7 million to the holders of the first deed of trust, and in return received only $1 million in cash and a note for $3.7 million more. As the Bankruptcy Court suspected, the amount received might not even cover costs. (Record Tab 9 p. 3).

Finally, equity traditionally affords no relief to those with unclean hands. The debt in this case is not dischargeable in the first instance because appellant's hands are extremely soiled: he committed fraud with respect to the false financial statements by which he received credit from Riggs Bank. In sum, this Court agrees with the court below that appellant deserves no equitable relief.

C. *Appellee's arguments on cross appeal.*

Appellee argues on cross appeal that appellant Ross should be barred even from asserting the defenses he raised before the Bankruptcy Court and now raises on appeal. (Brief of Appellee p. 20). Appellee asserts that because appellant, in the case below, failed to specifically plead these defenses and failed to disclose them even during pretrial proceedings, appellant waived such defenses pursuant to F.R.Civ.P. (8)(c) as incorporated by F.R.Bankr.P. 7008. The Bankruptcy Court disagreed, finding that appellee suffered no prejudice because post-trial briefs permitted appellee to adequately state its case. (Record Tab 7 p. 7).

This Court takes no position on appellee's cross appeal, finding this issue moot. Having rejected appellant's arguments on appeal, as did the Bankruptcy Court at trial, this Court finds no prejudice to the appellee and no further issue in controversy.

### III. *Conclusion.*

For the foregoing reasons, this Court finds no error in the decision and judgment of the Bankruptcy Court. Appellant's arguments are meritless, and thus the appellee's cross appeal is moot. The opinion of the Bankruptcy Court is affirmed and its judgment of $7,548,905.56 shall stand as entered below.