# Mabel Ryan v. Delbert Bruce Stearns, a/k/a Bruce Stearns and Jeanette Stearns

[376 A.2d 728]

No. 49-77

Present: **Barney, C.J., Daley, Larrow, Billings, and Hill, JJ.**

Opinion Filed June 7, 1977

Motion for Reargument denied June 24, 1977

*Joseph H. Badgewick* of *Ryan, Smith & Carbine, Ltd.*, Rutland, for Plaintiff.

*Garfield H. Miller* of *Black and Plante*, White River Junction, for Defendants.

**Hill, J.**   This appeal is taken from a judgment order of the Windsor Superior Court in which it was determined that the defendants were liable as co-makers on a certain promissory note acquired by the plaintiff via a rather involved series of transactions. The defendants have filed their appeal from this judgment. In addition, the plaintiff has filed a cross-appeal, alleging that the amount of money found by the trial court to be owed on the note is clearly erroneous.

The defendant Bruce Stearns and one G. E. Smith were partners in a construction business. In the course of its business, the partnership had borrowed money from the Randolph National Bank. The bank sought to consolidate the partnership's outstanding notes, most of which were unsecured, and to obtain some additional security. To this end, on January 15, 1971, Smith, his wife, and the defendants signed a

"Collateral Note," payable on demand in the sum of $10,000.00 at 8½% interest to the order of the Randolph National Bank. The note indicated in the relevant blank spaces that it was to be secured by real estate. Contemporaneous with the execution of this note, and as security therefor, Smith and his wife executed a mortgage deed to the bank covering two parcels of realty owned by them in the Town of Stockbridge, Vermont. The mortgage deed was duly recorded.

One of the parcels of land mortgaged by Smith to the bank was subject to a prior mortgage held by Harold and Rita Jacobs. On June 15, 1971, the Jacobs filed a petition of foreclosure on this mortgage. A judgment and decree of foreclosure was entered for the Jacobs in which it was provided that the property could be redeemed for the sum of $6,033.32 plus interest. On the final day of the allocated redemption period, Smith's wife informed her mother, the plaintiff here, that Smith was unable to redeem the property and that if she so desired, she could have the property for the redemption price. The plaintiff agreed to this proposition and redeemed the parcel for the amount of $6,259.57. Approximately one week thereafter, the property was conveyed via a "straw" transaction to Mrs. Smith and the plaintiff. Subsequently, on November 11, 1972, Mrs. Smith quitclaimed her interest in the parcel to the plaintiff.

As of November 11, 1972, then, the plaintiff was the sole owner of the subject property. At no time throughout this entire period was the plaintiff ever actually made aware of the mortgage and note encumbering the property.

Plaintiff had originally acquired the property with the intention of reselling it for a profit. Eventually, the plaintiff was able to find a willing buyer of the property for the price of $16,500.00. In the course of his title search of the premises, the buyer's attorney discovered the undischarged mortgage to the Randolph National Bank. Accordingly, in order that she could satisfy her obligation to convey a good and marketable title, the plaintiff bought the note for some $10,283.32. The note was endorsed without recourse by the bank to the plaintiff. The mortgage covering the parcel sought to be conveyed by the plaintiff was released and discharged; the mortgage lien on the second parcel was assigned to the plaintiff. On this same day,

the plaintiff sold the subject property for the agreed price of $16,500.00.

Plaintiff, as endorsee and holder of the note here in question, filed suit in Windsor Superior Court seeking to recover from the defendants, as co-makers on the note, the principal sum of the note plus interest and costs. The defendants answered and alleged the affirmative defenses of fraud, failure of consideration, mistake, accord and satisfaction and that the plaintiff was not a holder in due course.

Following a hearing, the court ruled that the defendants were liable for the balance due on the note, which it found to be $6,146.75 plus interest and attorney fees. Defendants now appeal this determination of the trial court. Both sides to the dispute concede that the sum found to be owed on the note by the court is erroneous and that the proper amount due on the note is its face value plus interest. The question remaining, then, is whether under the facts operant here, the plaintiff was entitled to recover, in whatever capacity, on the note.

Succinctly stated, appellants' argument is that the appellee made a full recovery of the amount she paid to the Randolph National Bank for the note as a result of the sale by her of the collateral securing the note. Appellants assert that the order of the trial court effectively gives the appellee a double recovery.

On its face, the case made by the appellants appears to be an attractive and persuasive one. However, it seems to us that it is completely inapposite to the facts of the given case. The trial court found on the basis of the evidence that the real estate transaction by which the appellee acquired her interest in the property was distinguishable from and completely unrelated to the original loan arrangement. See *Freccia* v. *Martin*, 163 Conn. 160, 302 A.2d 280, 283 (1972).

In reviewing such findings, we are mindful of the rule that the persuasive effect of the evidence and the credibility of the witnesses are for the trier of fact to decide, and a findings must stand if there is credible evidence to support it. *Fishbien* v. *Guerra*, 131 Vt. 493, 497, 309 A.2d 922 (1973); *Johnson* v. *Russell*, 134 Vt. 209, 356 A.2d 538 (1976). Our study of the record leads us to conclude that there is nothing in the facts of the case that would justify denying the plaintiff her right to recover on the note. See *Randolph National Bank* v. *Vail*, 131 Vt. 390, 308 A.2d 588 (1973).

■ The court below concluded that the appellee was a holder in due course of the note in question and that the appellants had failed to prove any defense that might prevent her from recovery thereon. Employing the analytical structure provided in Article 3 of the Uniform Commercial Code (Title 9A V.S.A. §§ 3-101 through 3-805), it appears that the trial court's determination is well-founded. The plaintiff was a holder of a negotiable instrument for which she had given value in good faith without notice of any possible defense against it. 9A V.S.A. § 3-302. As a transferee, or endorsee who has established her rights as a holder in due course, the plaintiff was entitled to recover summarily unless the defendants, undisputed obligors on the note, could establish a defense. Hart and Willier, 2 Commercial Paper § 12.04[3] (1976); *Lamson* v. *Commercial Credit Corp.*, 187 Colo. 382, 531 P.2d 966, 969 (1975).

As stated earlier in this opinion, the defendants did raise in their answer several affirmative defenses. However, the only such defense they have chosen to pursue is that of satisfaction. See 9A V.S.A. § 3-601. In their brief, the appellants argue that the appellee was made whole by virtue of her resale of the collateral property. The appellants have characterized the series of transactions by which the appellee acquired full title to the property as a "voluntary foreclosure," and have further likened the appellee's position to that of a secured party who has opted to satisfy the debt out of the security collateral.

The appellants' contentions would have far greater weight had they been applied to a more appropriate factual situation. Here, the subject note was expressly designed to consolidate several outstanding partnership obligations. It just so happened that Smith and his wife were willing to offer their Stockbridge property as security for the note. Although the appellants benefitted from the proceeds of the note to the extent of their interest in the partnership, they never had any interest, title, or right whatever in the collateral real estate. Obviously, then, the appellants have in no way been subjected to a double liability on the obligation. Their liability, upon payment, will be completely discharged pursuant to 9A V.S.A. § 3-603. Any further debate over who owes whom will have to be settled in a separate action. *Lamson* v. *Commercial Credit Corp.*, *supra*.

■ Furthermore, it is clear that the appellee's status in this case is readily distinguishable from that of a secured party. The

appellee's interest in the property was acquired some time before her purchase of the note secured by the property. She had paid value for that interest to the extent of the redemption cost of $6,259.32 expended by her for the benefit of Smith. By the time appellee became holder of the note, none of the parties liable thereon had any interest whatever in the parcel in question. Its utility as a security device for the note was effectively terminated. The appellee was not acting as a mere "officious interloper" when she bought the note and secured a discharge of the mortgage. Instead, she was seeking to protect an established interest she had in the property. See *Norton* v. *Haggett*, 117 Vt. 130, 133, 85 A.2d 571 (1952). The appellee's clearly discernable intent in purchasing the note and obtaining a discharge of the mortgage on property to which she held record title was so that she could convey a good and marketable title to a prospective purchaser of the property. In cases of this sort, the purpose or intent with which a discharge is executed is relevant and properly to be taken into account. *First National Bank of Fairbanks* v. *Taylor*, 488 P.2d 1026, 1030 (Alas. 1971); *Dameris* v. *Homestead Bank*, 495 S.W.2d 52, 55 (Tex. Civ. App. 1973).

Certainly, as acknowledged by both parties, the appellee stands to gain a substantial profit as a result of her resale of the property. This appears, however, to be a "so what?" proposition. The appellee having paid a consideration of some $6,259.57 for the property, we fail to discern any theory that would bar her from obtaining a profit. Any such profit can hardly be termed a "windfall." The appellee has paid a good and valid price for the property independent of the note, and is entitled to her profit. Similarly, she has purchased the subject promissory note for its face value plus interest. In the absence of any credible defense offered by the appellants, she is entitled to recover against those liable on the note. Accordingly, we uphold that part of the judgment below finding the appellants liable on the note.

As for the amount actually to be paid on the note, it is clear that the trial court erred in its computation. The balance due was not the $6,146.75 found by the court, but was the full value of $10,000.00.

*The judgment, insofar as it concerns the liability of the appellants on the note, is affirmed. With respect to the damages found by the court, the judgment is reversed. Judgment is hereby*

*ordered entered for the appellee for $10,283.32 plus 8 1/2% interest from April 30, 1973, plus $400.00 in attorney fees.*