# Jane Licursi v. David J. Sweeney

[594 A.2d 396]

No. 89-277

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed May 3, 1991

*Harold B. Stevens*, Stowe, for Plaintiff-Appellee.

*Goodrich & Rice*, Montpelier, for Defendant-Appellant.

**Dooley, J.** Defendant, David J. Sweeney, purchased a restaurant in Stowe from plaintiff, Jane Licursi, giving three mortgages, including a third mortgage to plaintiff, to finance the purchase. Plaintiff regained title by foreclosing on her third

mortgage and by buying out the second mortgage. She then brought this action on the unpaid note, which the second mortgage secured, and obtained a judgment below. Defendant appeals, arguing in various ways that no action lies on this note. We agree and reverse.

In 1983 plaintiff sold the Matterhorn Restaurant in Stowe to defendant and R. Bruce Nourjian for $240,000. The sale was financed in part by funds obtained in return for three promissory notes: a note to a corporate lender in the amount of $85,000 and secured by a first mortgage; a note from defendant to Nourjian in the amount of $60,000 and secured by a second mortgage; and a note from defendant to plaintiff for $50,000 and secured by a third mortgage. Defendant paid the remainder to plaintiff in cash. Defendant failed to pay on the note to plaintiff, and on October 31, 1984, plaintiff began a foreclosure action on her third mortgage. A judgment order and decree of foreclosure was entered against defendant, Nourjian and LiBas Corporation (holder of a security interest in the personalty), on September 27, 1985. A certificate of nonredemption was issued on October 3, 1985. The decree of foreclosure granted plaintiff "immediate title to and possession of" the restaurant. Plaintiff entered into possession of the restaurant on October 3, 1985.

At the time of the foreclosure and the issuance of the certificate of nonredemption, the value of the Matterhorn Restaurant was $240,000, a sum in excess of the aggregate due on all three mortgages. The amount of principal due on the first mortgage on September 27, 1985 was $75,000; the amount of principal due on the second mortgage on that date was $60,000. No payments were made on either the first or second mortgages after September 22, 1985, and they were in default as of October 22, 1985. In return for "value received," Nourjian assigned the second mortgage note and mortgage, and quitclaimed his interest in the Matterhorn Restaurant, to plaintiff in November, 1985.

Thereafter plaintiff demanded payment from defendant on the promissory note from him to Nourjian, which Nourjian had assigned to her. Upon defendant's failure to pay, plaintiff brought the present action. Defendant argued at trial that his obligation under the second-mortgage note had been extinguished by merger, when a greater estate (the fee, obtained from defendant by plaintiff via foreclosure) and a lesser estate

(the second mortgage) in the same property met in the same person, the plaintiff, without an intermediate estate. See *Wright v. Anderson*, 62 S.D. 444, 253 N.W. 484 (1934); Annotation, *Union of Title to Mortgage and Fee in the Same Person as Affecting Right to Personal Judgment for Mortgage Debt*, 95 A.L.R. 89 (1935). The trial court, relying on *Walker, Smith & Co. v. Baxter*, 26 Vt. 710, 715 (1854), concluded that absent a showing of plaintiff's intention to merge estates, no merger occurred. Since merger was not in plaintiff's interest, the court concluded that she did not have the intent to allow a merger. The court's conclusion resulted in a judgment for plaintiff for $60,000, the amount of the note, plus interest due under the note. The present appeal followed.

The trial court and the parties have generally analyzed the issue here as one of merger of estates.[1] The question before us, however, is whether the plaintiff can collect on the note signed by defendant. Although the question may be related to the doctrine of merger, it is a different question. See Burkhart, *Freeing Mortgages of Merger*, 40 Vand. L. Rev. 283, 369 (1987) ("merger is absolutely inapplicable to the debt aspect of the mortgage transaction"). It must be resolved by the application of contract principles. See *id.*

■ To examine this question, we need to examine the independent offices of the mortgage security and the note. If a mortgagee holds the note, he or she may proceed on either to collect the debt owed. See *Shapiro v. Gore*, 106 Vt. 337, 339, 174 A. 860, 860 (1934). If, however, the debt is satisfied through the mortgage, in whole or in part, the obligation represented by the note is also satisfied unless a deficiency is owed. See *Hewey v. Richards*, 116 Vt. 547, 551, 80 A.2d 541, 543 (1951). Only the excess of the debt above the value gained from the mortgage satisfaction can be recovered from the obligor on the note.

---

[1] Plaintiff for the first time in this Court argues that defendant failed to plead merger and cannot rely on it here. Defendant did plead accord and satisfaction, which was sufficient to put plaintiff on notice of his defense to the note under the theory adopted by this Court. In any event, the defense raised here was developed by the stipulated facts and addressed without objection by the trial court. It was tried by the "implied consent" of the plaintiff. See V.R.C.P. 15(b); *Silva v. Stevens*, 156 Vt. 94, 105–06, 589 A.2d 852, 858 (1991). The issue is properly before us.

There is no question here that the mortgage originally given to Nourjian was satisfied by its purchase by plaintiff. Plaintiff is now both mortgagee and mortgagor on this mortgage, and there are no intervening creditors. This second mortgage no longer has any legal significance to this controversy, except that the circumstances of its satisfaction affect the amount due on the note. To determine this, we must look to see if there is any deficiency. The value of the Matterhorn Restaurant, $240,000, less the principal due on the first mortgage, $75,000, was $165,000. The amount owed to plaintiff at the time of foreclosure of the third mortgage was $50,000. Assuming she paid full price for the second mortgage at $60,000, the amount of money she has extended in these transactions is $110,000. The property was valued by the court far in excess of the amounts owed. There is no deficiency, and plaintiff cannot recover.

Almost this exact situation is described in the leading treatise on mortgages as follows:

> [I]f the holder of both a junior and senior mortgage forecloses the junior and buys at the foreclosure sale it is generally held that, in the absence of an agreement to the contrary, the mortgagor's personal liability for the debt secured by the first mortgage is extinguished. The reason given is that upon a foreclosure sale under a junior mortgage the purchase is subject to the payment of the prior lien with the result that "the mortgagor has an equitable right to have the land pay the mortgage before his personal liability is called upon" and the purchaser, if he owns or acquires the mortgage, will not be permitted to enforce it against the mortgagor personally. The second mortgagee purchaser is presumed to have made allowance for the prior lien in making its bid.
>
> The above result and analysis are logical and fair only if one assumes that the land was worth at least an amount equal to the sum of the two mortgage debts. Thus, for example, if the first mortgage debt is $40,000, the second mortgage debt is $20,000 and the fair market value of the land free and clear of liens is at least $60,000, and the mortgagee purchases for $20,000 (fair market value less $40,000) it makes sense to apply merger to destroy the sen-

ior debt. In such a case, the mortgagee would be unjustly enriched if he were permitted to become the owner of land worth at least an amount equal to the sum of the two mortgage debts and also allowed to collect on the senior debt.

G. Nelson & D. Whitman, Real Estate Finance Law 467–68 (2d ed. 1985) (footnotes omitted). While we differ with the treatise on the need to use the concept of merger to reach its result, the circumstances here demand the same result as in the treatise hypothetical. As in the treatise hypothetical, plaintiff here would be unjustly enriched if she could obtain land worth well in excess of the secured debt and, in addition, obtain a personal judgment for that same debt in the amount of $60,000. The fact that the mortgagee in the treatise hypothetical acquired the interest by purchase at a foreclosure sale, while plaintiff here obtained the interest by strict foreclosure, is irrelevant to the central point. In both instances the mortgagee would be unjustly enriched if allowed to collect also on the personal debt instrument. See also Burkhart, *Freeing Mortgages of Merger*, 40 Vand. L. Rev. at 380–81 ("the purchasing lender would be enriched unjustly if it could collect the debt secured by that lien"). In short, plaintiff is seeking a deficiency judgment where there is no deficiency.

The analysis here is similar to that in the leading case cited by defendant, *Wright v. Anderson*, 62 S.D. 444, 253 N.W. 484 (1934). *Wright* recognizes that the issue of personal liability on the debt obligation is different from the issue of merger of the property interests. It holds that an "extinguishment" of the debt obligation occurs when the creditor holds the fee interest and thereafter purchases an outstanding mortgage. *Id.* at 453, 253 N.W. at 489. The reason is that the creditor "is the owner of the res which ought to discharge the debt as between himself and the mortgagor and he will not be permitted to retain the res and at the same time to say it is insufficient to satisfy the debt." *Id.* at 450, 253 N.W. at 487. *Wright* goes beyond familiar principles of unjust enrichment and denies recovery even though the creditor has not obtained the full amount owed from the land. See *id.* at 447, 253 N.W. at 486. The asserted reason is that "a purchaser who was willing to pay money for the equity of redemption will not be heard to say . . . that the land (the primary fund for the discharge of the prior incumbrance) is not worth

the amount thereof." *Id.* at 450, 253 N.W. at 487. We prefer a more fact-determinative analysis, based on the equities and the economics of the situation, allowing plaintiff to recover only if the land value were insufficient to cover the debt.

Our analysis is also more consistent with the early Vermont precedents relied upon by the trial court. The trial court, in adopting its merger analysis, relied primarily on the decision of this Court in *Walker, Smith & Co. v. Baxter*, 26 Vt. 710 (1854). *Walker* has some factual similarity to this case. It involves allowances against the estate of a mortgagor pursuant to mortgage notes. As in this case, the mortgagee-plaintiff had acquired the fee interest in the estate. He did so by purchasing it from the mortgagor's estate. The opinion, grounded on merger analysis, holds that the purchase of the right of redemption "will not be considered a merger of the different estates of the mortgagor and mortgagee, so as to operate as payment or satisfaction of the debts for which the mortgages were given, when it will operate inequitably, or to the injury of the mortgagee." *Id.* at 715. The language the trial court relied on states that in equity a merger of estates occurs where the parties intend so or "there exists some beneficial interest on the part of the mortgagee, that requires to be protected, and where it is [to the mortgagee's] benefit to keep the legal and equitable interests separate and distinct." *Id.* The core of the reasoning, however, lies in the analysis of the economics involved and the following principle:

> In cases where there is no interest on the part of the mortgagee to keep the two estates separate and distinct, a merger is effected by a union of the estates, the less estate sinks into the greater, and the debt will be treated as paid and satisfied, particularly if the value of the mortgaged premises is equal to the amount of the debt.

*Id.* at 715–16. In *Walker*, unlike this case, the mortgages did not recover for the plaintiff the value of the debt owed. Indeed, when the administrator of the estate sold the fee interest to plaintiff, he disclosed the presence of the former mortgages and stated that 50% of plaintiff's outstanding debt would be paid by the estate. *Id.* at 716. The Court specifically found that plaintiff relied upon the administrator's representation in purchasing

the equity of redemption and the price reflected that representation. *Id.*[2]

Although its confusing analysis of merger obscures the central holding, *Walker* is consistent with the result we have reached here. By analyzing the relationship between the parties, it reached a result that was equitable to the interests involved. While it was concerned with the "best interests" of the mortgagee, those best interests were to obtain the benefit of the bargain, not to obtain a double windfall recovery. We see nothing in *Walker* that requires us to go further here. See also *Board of Trustees v. Ren-Cen Indoor Tennis & Racquet Club*, 145 Mich. App. 318, 325–26, 377 N.W.2d 432, 436 (1985) ("equity is of no assistance to plaintiff under the circumstances presented here, because plaintiff seeks to avoid a merger to enable it to obtain, in effect, a double recovery), *leave to appeal denied*, 425 Mich. 875, 388 N.W.2d 680 (1986).

■ A more troubling precedent is *Ryan v. Stearns*, 135 Vt. 385, 376 A.2d 728 (1977), a case not cited by the trial court or the parties. While the facts of the case are confusing, the situation before the Court was similar to that present here because the plaintiff held the equity of redemption as a result of a foreclosure, as well as an outstanding mortgage. Plaintiff then sold the property to a third party for a price exceeding the outstanding debt that was owed to her. She sued on the note, and defendant responded that she had been paid from the proceeds of the sale and was seeking a double recovery. This Court responded to the argument as follows:

> Certainly, as acknowledged by both parties, the appellee stands to gain a substantial profit as a result of her resale of the property. This appears, however, to be a "so what?" proposition. The appellee having paid a consideration . . . for the property, we fail to discern any theory that would

---

[2] A later case, *Belknap v. Dennison*, 61 Vt. 520, 17 A. 738 (1889), also relied upon by the trial court and the plaintiff, is only of limited relevance here because it involved a mortgage foreclosure and not an action on the underlying debt. It is also factually distinguishable because the plaintiff held a first mortgage and the fee interest, while defendant held a second mortgage. The Court held that it must find merger inapplicable so that plaintiff could "retain a priority over other encumbrances," that is, defendant's second mortgage. *Id.* at 521, 17 A. at 738.

bar her from obtaining a profit. . . . The appellee has paid a good and valid price for the property independent of the note, and is entitled to her profit. Similarly, she has purchased the subject promissory note for its face value plus interest. In the absence of any credible defense offered by the appellants, she is entitled to recover against those liable on the note.

*Id.* at 389, 376 A.2d at 731. The opinion in *Ryan* is criticized persuasively in Burkhart, *Freeing Mortgages of Merger*, 40 Vand. L. Rev. at 384 n.320, as economically unsound because plaintiff had already recovered the amount owed to her from the sale of the property and was seeking a double recovery. The Court's result unjustly enriched her. The result in *Ryan* can be explained by the failure of the defendant to offer a "credible defense" on which the Court could rely. To the extent *Ryan* is read as supporting a contrary result here, it is overruled.

Plaintiff here has already recovered all she is entitled to. Allowing recovery on the note would only unjustly enrich her. This action should have been dismissed.

*Reversed.*