ATLANTIC NATIONAL TRUST, LIMITED LIABILITY COMPANY, Plaintiff,

v.

R. Brent GUNDERSON, Defendant.

No. CIV 99–1696–ST.

United States District Court, D. Oregon.

Oct. 27, 2000.

Sanford R. Landress, Greene & Markley PC, Portland, OR, for Atlantic National Trust Limited Liability Company.

Sally R. Leisure, Portland, OR, for R. Brent Gunderson.

## OPINION AND ORDER

HAGGERTY, District Judge.

### I. Introduction.

Pending before the court is Plaintiff Atlantic National Trust, LLC's ("Atlantic National's") motion for summary judgment against Defendant R. Brent Gunderson ("Gunderson"). On May 25, 2000, Magistrate Judge Stewart issued her findings and recommendation that the motion be denied.[1] Atlantic National objects to the findings and recommendation. When a party objects to any portion of a magistrate judge's report, the district judge must make a *de novo* determination of that portion of the report. 28 U.S.C. § 636(b)(1)(B); *McDonnell Douglas Corp. v. Commodore Business Machines*, 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied* 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982). The district judge may receive further evidence, recommit the matter with instructions, or accept, reject, or modify the report, in whole or in part. *Id.* For the reasons stated below, the court finds that the magistrate judge's findings and recommendation cannot be adopted and the motion for summary judgment should be granted.

### II. Factual Background.

On September 26, 1997, Defendant Gunderson issued a $2,000,000 promissory note secured by a senior trust deed for an 86-unit apartment complex in Salem, Oregon. After a series of transactions, that note and trust deed were ultimately assigned to an entity known as Atlantic Ventures, LLC ("Atlantic Ventures"). On September 30, 1997, Gunderson issued a second promissory note for $313,963.28 to Emerald Gardens Limited Partnership ("Emerald Gardens"), along with a junior trust deed for the same apartment complex. Gunderson defaulted on both notes, and Atlantic Ventures instituted non-judicial foreclosure proceedings. Before a foreclosure sale could be conducted, however, Gunderson filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. The bankruptcy court eventually granted Atlantic Venture's motion for relief from the stay so that the foreclosure could proceed.

On October 25, 1999, the day prior to the foreclosure sale, Emerald Gardens sold its promissory note and junior trust deed to Plaintiff Atlantic National. Plaintiff Atlantic National is the parent corporation of Atlantic Ventures. Thus, Atlantic Ventures (the subsidiary) owned the first promissory note and senior trust deed, while Plaintiff Atlantic National (the parent) acquired the second promissory note and junior trust deed. At the foreclosure sale, Atlantic Ventures, as the highest bidder, then purchased the apartment complex for $2,359,500.16. This purchase price was less than the $2,578,549.41 total debt owing to Atlantic Ventures at the time of the trustee's foreclosure sale; however, within a month Atlantic Ventures was able to sell the property to an unrelated buyer for $2,960,000. Plaintiff Atlantic National then brought this action seeking to collect the remaining debt owed on the second promissory note.

### III. Discussion.

#### A. Oregon's Trust Deed Act.

■ A non-judicial foreclosure sale extinguishes all lien interests in the fore-

---

1. After Magistrate Judge Stewart issued her Findings and Recommendation, the case was referred to the bankruptcy court for several months before being transferred back to this court.

closed property so that the purchaser at the foreclosure sale takes title to the property free and clear.[2] ORS 86.770(1). Thus, under the Oregon Trust Deed Act, both Atlantic Ventures' and Atlantic National's liens in the apartment complex have been extinguished. Further, the Trust Deed Act provides that when a lien-holder institutes non-judicial foreclosure proceedings, the resulting trustee's sale is the lien-holder's exclusive legal remedy. "[N]o other or further action shall be brought ... against the grantor ... on the note ... secured by the ... trust deed ... after a trustee's sale." ORS 86.770(2). Thus, by instituting the trustee's sale, Atlantic Ventures, the senior lien-holder, lost its right to sue Gunderson for the remaining balance on the first promissory note, and the money Atlantic Ventures recovered from the sale of the property secured by the first trust deed is its sole remedy for Gunderson's failure to pay the first promissory note. Unlike a senior lien-holder, however, ORS 86.770(2) does not prohibit a junior lien-holder from suing on the secured promissory note. *Urbach v. Monchamp Corp.*, 110 Or.App. 275, 821 P.2d 1116, *rev. denied,* 313 Or. 211, 830 P.2d 597 (1992). When different parties own the first and second notes, the rationale of the statute is .clear: because the junior creditor ordinarily will not recover its debt by way of the senior creditor's non-judicial foreclosure sale, the foreclosure process should not leave the junior creditor without a remedy. Thus, ORS 86.770(2) allows the junior creditor to attempt to recoup its loss by permitting the junior creditor to sue the debtor on the second note.

In *Urbach,* 110 Or.App. at 277, 821 P.2d 1116, the Oregon Court of Appeals ruled that under the plain language of ORS 86.770, even if one creditor holds both trust deeds and both notes, the creditor retains a cause of action on the second note even though it foreclosed on the property as a result of the debtor's failure to pay the first note. As noted by the dissent in *Urbach,* however, the statute's preservation of a cause of action for junior creditors creates a loophole for shrewd creditors. *Id.* at 279, 821 P.2d 1116 (Warren, J., dissenting). The court of appeal's construction of the statute "permits lenders to avoid th[e] statute's constraints simply by requiring a borrower to execute two notes and two trust deeds. On default, the lender can foreclose one trust deed, recover the security, preclude the borrower from redeeming the property and then bring an action on the other note." *Id.*

 Despite *Urbach,* Gunderson argued to the magistrate judge that "merger" prevented Atlantic National from collecting on the second note. Under Gunderson's theory, Atlantic Ventures and Atlantic National are alteregos, a contention which is supported by the evidence. According to Gunderson, when Atlantic National acquired the second lien, the two security interests, being held by what is in essence one entity, merged and thus both were extinguished by the foreclosure sale. As the magistrate judge noted, however, under Oregon law, merger is a matter of the intention of the parties, and there is no evidence that either Atlantic National or Atlantic Ventures intended a merger to occur.[3] *See Baxter v. Redevco, Inc.,* 279 Or. 117, 123–124, 566 P.2d 501 (1977) (describing the requirements for merger). Moreover, Gunderson's theory runs into an even greater problem. *Urbach* offers no indication that the merger doctrine applies when one creditor attempts to collect on two notes. While the magistrate judge

---

2. "The main attraction of trust deeds, as opposed to standard mortgages, is the elimination of the borrower's right of redemption." *Urbach v. Monchamp Corp.,* 110 Or.App. 275, 279, 821 P.2d 1116 (1991) (Warren, J., dissenting).

3. Gunderson does not challenge this finding. Thus, it is reviewed only for clear error. *Campbell v. United States District Court,* 501 F.2d 196 (9th Cir.1974).

properly found that the merger doctrine did not apply, she raised an additional defense, *sua sponte*, on behalf of Gunderson. She found that Atlantic Ventures/Atlantic National would be unjustly enriched if it could both foreclose on the property and collect on the second note. (*See* Findings and Recommendation at 18–25) (citing *Licursi v. Sweeney*, 156 Vt. 418, 594 A.2d 396, 398 (1991)). For the reasons explained below, the court finds that the Oregon Supreme Court would be unlikely to agree with this ruling and, therefore, the recommendation cannot be adopted.

### B. Federal Application of State Law.

■■■■ As an initial matter, it must be remembered that this federal court is not deciding this issue on a clean slate. The Oregon Court of Appeals has already ruled that a single creditor may foreclose on a senior trust deed and still retain an action for non-payment of a junior note. *Urbach, supra.* In applying the law of the forum state, a federal court "must apply the substantive law that it conscientiously believes would have been applied in the state court system, which includes the state appellate tribunals." Wright, Miller, and Cooper, *Federal Practice and Procedure*, § 4507, at 126. "Even if, in the considered judgment of the federal court or that of the courts of other states, the rule of law that was announced by the forum state's highest court is anomalous, antiquated, or simply unwise, it must be followed by the federal court nonetheless, unless there are very persuasive grounds for believing that the state's highest court no longer would adhere to the previously announced principles." *Id.* at 141–147 (citing numerous cases). "If the forum state's highest court has not ruled on a particular issue, the decisions of the intermediate appellate court or courts of that state constitute the next best indicia of what state law is and decisions must be given proper respect and cannot be disregarded simply because the federal court finds them unsound[.]" *Id.* 150–157. Although a federal court may reach a different conclusion if it believes the highest court would reach a different decision than the intermediate court, the intermediate court's decision remains "persuasive precedent." *Chemstar, Inc. v. Liberty Mutual Ins. Co.*, 41 F.3d 429, 432 (9th Cir.1994). Typically, a federal court requires "other persuasive data" beyond the mere fact that it disagrees with the decision before it will be disregarded. *Federal Practice*, § 4507, at 157 (citing cases). Although the soundness of the *Urbach* decision is a matter on which reasonable minds could differ, no persuasive data exists suggesting that the Oregon Supreme Court would be inclined to overrule, rather than uphold, that decision. Thus, *Urbach* is "persuasive precedent."

Furthermore, even in the absence of the *Urbach* decision, it is doubtful that the Oregon Supreme Court would recognize an unjust enrichment defense in this case. The Oregon Supreme Court has expressed significant reservations about applying unjust enrichment in the highly analogous context of the Uniform Commercial Code's security-interest provisions. In *U.S. National Bank v. Boge*, 311 Or. 550, 559, 814 P.2d 1082 (1991), the court opined that the "purpose and effectiveness of the UCC would be substantially impaired if interests created in compliance with the [Article 9] UCC procedures could be defeated by application of the equitable doctrine of unjust enrichment." *See also Edward D. Jones & Co. v. Mishler*, 161 Or.App. 544, 569, 983 P.2d 1086 (1999) ("[I]t is debatable whether [the unjust-enrichment] doctrine applies in this UCC context."). Thus, unjust enrichment is unlikely to be applied by Oregon Courts as a defense to a collection action arising out of the foreclosure of a trust deed.

### C. Inequitable Conduct.

### 1. Elements of Unjust Enrichment.

■■■■ Even if an unjust-enrichment defense were available, it does not fit these facts. Under Oregon law, unjust enrich-

ment requires "a benefit conferred, awareness by the recipient that a benefit has been received and, under the circumstances, it would be unjust to allow retention of the benefit without requiring the recipient to pay for it." *Mishler*, 161 Or. App. at 569, 983 P.2d 1086. Atlantic National purchased the second note from Emerald Gardens. Thus, Atlantic National paid for the benefit of being able to collect the second note. Additionally, the benefit was conferred on Atlantic National by Emerald Gardens, not Gunderson. It is difficult to see how Gunderson could have a defense where Gunderson did not confer the benefit.

### 2. No "Double Recovery."

The magistrate judge believed it was inequitable for Atlantic Ventures to foreclose on the property and then sell it to a third party for a profit after buying it for a lesser amount at the foreclosure sale, while at the same time retaining an action against him on the second note through its parent corporation. She found that the Atlantic Ventures/Atlantic National was seeking an improper "double recovery." (Findings and Recommendation at 20.) The court finds, however, that Atlantic Venture's profit on the purchase of the property is not best characterized as a "double recovery." As the United States Supreme Court has explained, the very nature of a foreclosure sale dictates that the debtor's property will, in all likelihood, be sold at a price below market value. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 1762, 128 L.Ed.2d 556 (1994). Property subject to non-judicial foreclosure must be sold within a time and in a manner prescribed by the state. ORS 86.755. "[P]roperty that *must* be sold within those strictures is simply *worth less*. No one would pay as much to own such property as he would pay to own real estate that could be sold at leisure and pursuant to normal marketing techniques." *BFP*, 114 S.Ct. at 1762 (emphasis in original). As a result, a creditor is often the highest bidder at a foreclosure sale. As

with any purchaser, if the creditor buys the property, the creditor owns it free and clear of all other encumbrances. ORS 86.770(b). And as with any purchaser, the creditor has the right to dispose of it as the creditor sees fit, including reselling it on the open market. As plaintiff's counsel notes, any profit realized by the creditor from reselling it "is not a second recovery on the debt foreclosed. The later profit derives from the creditor's ownership interest, not from a 'double recovery' on the debt extinguished by the foreclosure sale." (Plaintiff's Objection at 19.)

### 3. Lack of Inequity to Gunderson.

Allowing Atlantic National to recover on the second note is no more inequitable to Gunderson than allowing an independent creditor to recover on the second note. Under ORS 86.770, a junior lien-holder explicitly retains a cause of action against the debtor for non-payment of the note. Even when the junior creditor is completely independent from the senior creditor, the senior creditor will have taken the debtor's property and the junior creditor will have filed an action against the debtor for non-payment of the second promissory note. For example, if Emerald Gardens had retained the note, it clearly could have instituted an action against Gunderson for non-payment, despite the foreclosure proceedings instituted by Atlantic Ventures. Thus, even if the second note had never been sold, Gunderson would still have lost the apartment complex, Atlantic Ventures would have made a profit on it, *and* Gunderson would have been sued on the second note. From Gunderson's standpoint, he is in the same position regardless who owns the second note. Although this treatment is certainly not favorable to the debtor, it is an ordinary part of Oregon's trust-deed system.

### IV. Conclusion.

The court finds that the equitable defense of unjust enrichment cannot preclude

Atlantic National from obtaining summary judgment against Gunderson for non-payment of the second note. Defendant Gunderson offers no other defenses to Atlantic National's motion for summary judgment. (*See* Defendant's Memorandum in Opposition to Summary Judgment at 1–2.) The court finds that no genuine issues exist as to any material facts and plaintiff is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Therefore, Plaintiff Atlantic National's motion for summary judgment, (doc. 6), is granted, and the Magistrate Judge's Findings and Recommendation, (doc. 21), is not adopted. Plaintiff is given until November 20, 2000 to file a statement of the amount presently due and owing on the second note, supported by appropriate documentation. Defendant shall have ten days thereafter to present specific objections to plaintiff's calculations of that amount. The clerk shall then forward the matter to the undersigned judge for entry of final judgment.

IT IS SO ORDERED.